262 N.J. Super. 551 (1993)
621 A.2d 526
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HASSAN XAVIER LAWS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 1993.
Decided March 11, 1993.
*554 Before Judges ANTELL, DREIER and SKILLMAN.
Dennis F. Gleason argued the cause for appellant (Zulima V. Farber, Public Defender, attorney; Mr. Gleason, of counsel and on the brief).
Catherine A. Foddai, Deputy Attorney General argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Ms. Foddai, of counsel and on the letter brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from convictions of possession of cocaine, N.J.S.A. 2C:35-5a(1); distribution of cocaine, N.J.S.A. 2C:35-5a(1); possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5b(3); possession of cocaine with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7; and employing a juvenile in a drug distribution scheme, N.J.S.A. 2C:35-6. Defendant was sentenced to concurrent terms of four years for the possession, five years with a two and one-half-year parole disqualifier for the distribution, five years with a two and one-half-year parole disqualifier for possession with intent to distribute, five years with a three-year parole disqualifier for possession with intent to distribute within 1,000 feet of school property, and eight years with a five-year parole disqualifier for employing a juvenile in a drug distribution scheme. Aggregate fines and penalties were $6,000 DEDR, $250 lab *555 fees, $150 VCCB and thirty months' suspension of defendant's driver's license. Thus, defendant's aggregate sentence was eight years with a five-year parole disqualifier, plus the additional fines, fees and suspension.
On December 7, 1988, a Plainfield police officer observed seven drug transactions on the corner of Berkman Street and East Sixth Street in the City of Plainfield. The officer observed a youth wearing a dark blue Los Angeles Raiders jacket and black cap approach cars which stopped in the middle of the street. The youth spoke to occupants of the stopped vehicles, accepted cash from them and then approached a man who was standing in a nearby house's driveway and wearing a white jacket, blue hat, jeans and carrying a cane. The man reached underneath the porch of the house, lifted a panel of plywood and extracted a yellow and black box. The man extracted items from the box and gave them to the youth, whereupon the youth delivered the items to the occupants of the stopped cars.
The officer observed this activity from a secret location approximately 150 to 200 feet from the transactions. His 20/20 vision was supplemented by ten-power binoculars making the transactions appear ten to fifteen feet distant.
At the surveillance officer's radioed direction, two police cars followed and pulled over one of the vehicles making purchases as it exited the neighborhood. The officers arrested its occupants. Police then moved in on the transaction area and found seven bags of crack cocaine in the box below a sheet of plywood under the porch of the house under surveillance. Police quickly identified and arrested seventeen-year-old B.W. as the youth involved in the seven transactions. B.W. was carrying $445 on his person at the time of the arrest. Police also identified and arrested defendant, Hassan Xavier Laws, as the man involved in the transactions. Defendant had seventy-one cents and a bag of crack cocaine (packaged differently from the cocaine in the box) on his person at the time of his arrest. Although one of the arresting officers testified that defendant possessed a *556 cane when he was arrested, jail records indicate that defendant did not have the cane when brought to the station.
During the presentation of defendant's charges to the Grand Jury, the prosecutor did not specifically list or announce the elements of each count listed above. He merely announced the charges at the beginning and the conclusion of the presentation. The prosecutor did, however, ask the surveillance officer, the only grand jury witness, precise questions. In the course of questioning the officer, the prosecutor elicited information sufficient to satisfy all of the elements of each crime charged. When finished, the prosecutor later asked the grand jurors if they had any questions as to fact or law. The grand jurors had no questions.
Before trial, the court held a hearing, required by State v. Crudup, 176 N.J. Super. 215, 422 A.2d 790 (App.Div. 1980), to determine whether trial testimony or discovery should reveal the location of the police surveillance point employed by the officer. Defense counsel was excluded from this hearing. After hearing testimony from the officers, the trial judge decided not to reveal the location because of its continuing use as a surveillance post and the real threat of danger to police officers and the location's inhabitants should it become public knowledge. The judge also concluded from the testimony that there were no obstructions to the officer's view and no problems with the angle of sight which would impugn the officer's observations. The judge further stated that he would view the site himself, alone, to verify this conclusion. He did so and made a record of his findings. Defense counsel also elicited these conclusions from the observing officer on cross-examination at trial.[1]
*557 During trial, another State's witness testified that drug transactions involving two people, such as those witnessed by the surveillance officer, are common. He also testified, however, that one found possessing cocaine but no money, such as defendant at the time of arrest, is more probably a mere drug user and not a drug seller.
The defense submitted evidence that defendant had been babysitting for his sister's children until approximately fifteen minutes before the officer observed the drug transactions. Defendant's sister also testified that she gave defendant $15 and sent him to purchase groceries from a store on the corner where the transactions occurred, thus placing defendant at the scene when the officer observed the transactions. As defendant only possessed one bag of crack cocaine on his person at the time of his arrest, defense counsel argued in summation that defendant had squandered his grocery money on the purchase of the crack cocaine but was otherwise uninvolved in selling the drugs.
In the midst of the jury's deliberations, the foreperson submitted the following question to the court regarding Count Five, employing a juvenile in a distribution scheme: "Does the fact that Laws is an adult and [B.W.] is a minor mean that the adult has used that minor, or that the adult is automatically felt to have control over the juvenile?" Over the objection of defense counsel, the judge answered the jury's question with a definition of "use" and an analogy to statutory rape.
Definition of use: To be put into service. To obtain an end.
And I'm going to give you an analogy. I'm not suggesting by means of this analogy that there is anything comparable or its to inflame or impassion. But, so that you understand between an adult and a minor, and I think that's what you're asking me about, what are the elements  what's involved when the word "use" is employed in the statute. I'm going to give you an example in layman's terms of statutory rape, where you have an adult male and an underage female with respect to intercourse between them. And whereas the adult male, even if the female consents, and even if she initiates it, if they have intercourse it's a crime. It's statutory rape.

*558 So that the age of the male and the age of the female, if the act takes place, it doesn't matter who initiates it. Even if it's voluntary, it doesn't matter whether  even with consent, it doesn't matter who initiates it.
If the part played by the adult in the statute that you are considering, Count Five, if he involved the minor in an integral part of obtaining the end of distribution, if it is an integral part of carrying out the distribution of the cocaine from the stash point to the buyer in the car, then in the statutory sense of this statute there has been a use of the minor.
It is not automatic merely because of the age. You must find the essential conduct of carrying out a distribution which involved both parties to distribute the drug.
Within fifteen minutes of hearing the judge's supplemental instruction, the jury returned its guilty verdicts.
On appeal, defendant raises the following issues:
POINT I
DEFENDANT WAS DENIED THE OPPORTUNITY TO FULLY CONFRONT AND CROSS-EXAMINE THE ONLY WITNESS LINKING HIM TO THE SALE OF DRUGS WHEN THE TRIAL COURT ERRONEOUSLY PERMITTED THE STATE TO REFUSE TO DISCLOSE THE LOCATION OF THE SURVEILLANCE POINT AND DEFENDANT WAS DENIED HIS RIGHT OF DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE TRIAL COURT EXCLUDED DEFENDANT'S COUNSEL FROM THE CRUDUP HEARING.
POINT II
DEFENDANT IS ENTITLED TO A JUDGMENT OF ACQUITTAL AS TO COUNT FIVE BECAUSE (A) THE SUPPLEMENTAL CHARGE WAS IN ERROR AND (B) THE EVIDENCE AT TRIAL FAILED TO SUPPORT THE CONVICTION.
A. The trial court's supplemental jury charge on count five was legally incorrect, inflammatory and prejudicial.
B. The evidence at trial shows that the juvenile was not used by the defendant in the distribution of drugs.
POINT III
REVERSAL IS REQUIRED BECAUSE THE GRAND JURY WAS NEVER INSTRUCTED AS TO THE APPLICABLE LAW. (NOT RAISED BELOW).
POINT IV
UNDER STATE V. DILLIHAY DEFENDANT IS ENTITLED TO BE RESENTENCED.
Defendant challenges the procedure employed to protect the location of the surveillance point. The trial judge excluded defense counsel and held the hearing then required by State v. Crudup, supra. Since the trial, the Supreme Court has decided the companion cases of State v. Garcia, 131 N.J. 67, 618 *559 A.2d 326 (1993), and State v. Zenquis, 131 N.J. 84, 618 A.2d 335 (1993). It is clear from these decisions that defense counsel is to be excluded from the hearing where a proper showing is made, as here, of danger to the location's occupants and of a potential loss to the police of a potential vantage point.[2] Under Garcia and Zenquis, the State may withhold disclosure of a surveillance point under the State's Evid.R. 34 privilege to withhold disclosure of the site as harmful to the public interest, but may not do so when a defendant's constitutional rights would be adversely affected.
As a general rule, a defendant is permitted to inquire into the officer's angle of sight and "whether the officer observed the alleged crime from an elevated position." Garcia, 131 N.J. at 82, 618 A.2d 326. In the present case, defendant cross-examined the surveillance officer at trial regarding all of the following factors which could have obscured his view: available daylight, trees, telephone poles, parked cars and the use of binoculars. Defendant also cross-examined the officer indirectly about the elevation of his observation point, eliciting the information that cars stopping on the street did not obstruct his line of vision. Because this information typifies several of the examples enumerated in Garcia supporting defendant's right to this information we hold that defendant's Garcia rights to explore elevation and line of sight have been honored.
In any event, further examination regarding line of sight and elevation would have been improper. Where the State "establishes good reason for nondisclosure," defendant's more extensive rights may be sacrificed. Ibid. Because any further examination into line of sight or elevation would have pinpointed the location, thus jeopardizing ongoing operations as well as *560 the public safety and personal safety of the officers, there was no error in this aspect of the trial.
The Court also noted that where "the only evidence offered against the defendant is the testimony of the surveillance officer, a court may determine that disclosure is warranted." Id. at 82, 618 A.2d 326. The judge in the case before us correctly employed a balancing test, later validated by Garcia. Id. at 79-81, 618 A.2d 326, but only the surveillance officer's testimony placed defendant as a participant in the crime, thus possibly implicating the Garcia exception. However, defendant's participation was corroborated by the officer's description of defendant's clothing and the unusual addition of his carrying a cane. ("He was wearing a white jacket, blue hat, jeans; and he was carrying a brown cane.") Additionally, one of the arresting officers testified that when he read the report of the other arresting officer (not the surveillance officer) it caused him to remember that defendant had been carrying a cane when he was arrested. There thus was little likelihood that defendant had merely walked by the scene following the detailed observation of the seven drug transactions, and had been mistaken for the individual who had participated in the drug sales. We therefore determine that the requisites of Garcia and Zenquis have been satisfied in this case.
The harder question in this case is whether the trial judge's jury charge concerning N.J.S.A. 2C:35-6 accurately stated the governing law. The jury asked whether in a transaction involving an adult and a minor the adult is automatically deemed to have control over the juvenile. The judge's answer was equivocal. He principally gave extended analogy to what the judge noted was "in layman terms ... statutory rape." The comparison was unfortunate. N.J.S.A. 2C:35-6, entitled "Employing a juvenile in a drug distribution scheme," states:
Any person being at least 18 years of age who knowingly uses, solicits, directs, hires or employs a person 17 years of age or younger to violate N.J.S. *561 2C:35-4 or subsection a. of N.J.S. 2C:35-5, is guilty of a crime of the second degree....[3]
We note that the statute uses the active verbs "uses, solicits, directs, hires or employs." The statute also requires that the actor must proceed "knowingly," defined in N.J.S.A. 2C:2-2 as having an awareness of the circumstances or at least of a high probability of their existence. Defendant was then twenty-three and his confederate was seventeen and there was a serious question concerning who controlled the situation.
There was evidence that the person controlling the transaction would most probably be the one who controlled the drugs and the money. At the scene of the distribution, defendant apparently controlled the drugs and the money, justifying a finding that defendant controlled the transaction. After the two left the scene, however, it was the juvenile who possessed the money. There was therefore some evidence from which a jury could have found that the seventeen-year old controlled the transaction and, in fact, had employed defendant. The statute does not permit a jury to convict merely because a juvenile and adult were involved in the transaction. The use of the active verbs in the statute requires that the adult control the juvenile. The answer to the jury's question was at best equivocal, and at worst inaccurate. A reversal is thus required on the single charge of violating N.J.S.A. 2C:35-6.
At oral argument we briefly covered the issue of whether the defendant must know that the juvenile is under the age of eighteen. The statute requires that the actor "knowingly uses ... a person 17 years of age or younger." There is a question whether the word "knowingly" applies to the use, etc. of the juvenile, or to the knowledge that the juvenile is in fact under eighteen years of age. This issue is put to rest by the second paragraph of the statute, stating:

*562 It shall be no defense to a prosecution under this section that the actor mistakenly believed that the person which the actor used, solicited, directed, hired or employed was 18 years of age or older, even if such mistaken belief was reasonable.
Thus, as to the age of the confederate, the statute virtually imposes strict liability. See the 1987 legislative commentary to this section quoted in Cannel, New Jersey Criminal Code Annotated, comment N.J.S.A. 2C:35-6 (1992-1993).
Defendant failed to raise his grand jury arguments in the trial court. Rule 3:10-2 therefore treats this argument as waived by the defense and not eligible for consideration by us unless defendant presents "good cause" why we should consider the issue. State v. Del Fino, 100 N.J. 154, 160, 495 A.2d 60 (1985). Defendant claims, in essence, that grand jury proceedings which produce an indictment without hearing a verbatim reading of applicable statutes or a recitation of all legal elements of each charge by the prosecutor are unconstitutional. Art. 1, para. 8 of the New Jersey Constitution, which merely requires grand jury presentment, makes no such demands and imparts no such rights to the criminal defendant.
Adding to the grand jury's own powers of investigation, a prosecutor's advice to the lay jury on the applicable law helps make the grand jury more effective. See United States v. Sells Engineering, Inc., 463 U.S. 418, 430, 103 S.Ct. 3133, 3141, 77 L.Ed.2d 743, 756 (1983) (discussing the functioning of the modern grand jury). Because of the non-adversarial nature of grand jury proceedings, however, incomplete or imprecise legal interpretations will not warrant dismissal of the indictment. State v. Schmidt, 213 N.J. Super. 576, 584, 517 A.2d 1226 (App.Div. 1986), rev'd on other grounds, 110 N.J. 258, 540 A.2d 1256 (1988). Because an indictment should only be quashed on the "clearest and plainest grounds," State v. Dixon, 125 N.J. 223, 237, 593 A.2d 266 (1991), the conduct of a prosecutor should not warrant dismissal unless it clearly invades the grand jury's decision-making function. State v. Schamberg, 146 N.J. Super. 559, 564, 370 A.2d 482 (App.Div.), *563 certif. denied, 75 N.J. 10, 379 A.2d 241 (1977) (involving alleged prosecutorial misconduct before a grand jury).
In his presentment to the grand jury, the initial prosecutor in this case merely announced the charges and applicable statutes. During the questioning of the surveilling officer, however, the prosecutor wove the elements of each crime, where not obvious, into his questions.
In light of the prosecutor's detailed questions and the self-explanatory nature of each of the charged offenses[4], we find no "good cause" for ignoring the procedural bar to adjudicating this claim, and no risk of "fundamental injustice" flowing from invocation of the bar. In any event, the minute risk of contamination of the indictment due to the grand jury being "uninformed" was rendered moot by defendant's subsequent trial and convictions by the petit jury. See U.S. v. Mechanik, 475 U.S. 66, 70, 106 S.Ct. 938, 941, 89 L.Ed.2d 50, 56 (1986).
Defendant's claim that the State's evidence was insufficient to support the convictions is clearly without merit. R. 2:11-3(e)(2).
Since defendant's conviction for employing a juvenile in a drug distribution scheme is reversed and is to be remanded for retrial, we will not consider the totality of defendant's sentencing arguments, except to state that under State v. Dillihay, 127 N.J. 42, 46-50, 601 A.2d 1149 (1992), the convictions for possession with intent to distribute and possession with intent to distribute within 1,000 feet of school property should have been merged. With this merger and the vacating of the conviction noted above, the matter must also be remanded for resentencing on the remaining counts, which are hereby affirmed.
*564 The conviction for employing a juvenile in a drug distribution scheme is reversed and remanded for retrial. The convictions for distribution of CDS and distribution of CDS within 1,000 feet of school property are merged and the sentence for distribution of CDS is therefore vacated. The remaining convictions are affirmed, but the matter is remanded for resentencing.
NOTES
[1] Specifically, the officer's trial testimony, without revealing the location of the surveillance point, revealed the distance from the transaction site, the time of day, lighting, absence of obstructions, presence of trees and a telephone pole, and the fact that the cars which stopped in the street did not obstruct his view of the transactions.
[2] Although we have noted that the trial judge in the case before us took the unusual step of personally visiting the location and confirming that there was an unobstructed view between the vantage point and the drug transaction site, we by no means wish to imply that such a visitation is necessary or even desirable.
[3] The cited sections are those prohibiting the maintaining or operating of a controlled dangerous substance production facility and the manufacturing, distributing or dispensing of a controlled dangerous substance.
[4] E.g., there is little left for a grand jury to know about the elements of N.J.S.A. 2C:35-7 once it learns that the charge is "possession of controlled dangerous substance with intent to distribute within 1,000 feet of school property...."