152

791 A.2d 1012

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. NAIM LASSITER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 25, 2001—Decided February 14, 2002.

Before Judges STERN, COLLESTER and PARKER.

*Peter A. Garcia,* Acting Public Defender, attorney for appellant (*Virginia M. Lincoln,* Designated Counsel, of counsel and on the brief).

*Thomas V. Manahan*, Union County Prosecutor, attorney for respondent (*Patricia L. Cronin*, Legal Analyst, of counsel and on the brief).

The opinion of the court was delivered by

STERN, P.J.A.D.

Defendant was convicted of second-degree employing a juvenile to distribute a controlled dangerous substance, *N.J.S.A.* 2C:35-6 (count one);[1] third-degree distribution of cocaine, *N.J.S.A.* 2C:35-5(a)(1) and (b)(3) (count two); third-degree possession of cocaine, *N.J.S.A.* 2C:35-10(a)(1) (count three), and third-degree possession of cocaine with intent to distribute, *N.J.S.A.* 2C:35-5(a)(1) and (b)(3) (count four). He was sentenced to seven years in the custody of the Commissioner of Corrections with a five year period of parole ineligibility on count one, and to a four year concurrent term on count two. Counts three and four were merged into count two for sentencing purposes. The court also imposed an aggregate V.C.C.B. assessment of $100, S.N.S.F. assessment of $150, D.E.D.R. penalty of $3,000 and a lab fee of $100.[2]

On this appeal defendant argues:

POINT I THE DEFENDANT IS ENTITLED TO A JUDGMENT OF ACQUITTAL ON COUNT 1 SINCE THE STATE FAILED TO PROVE THE AGE OF HASSAN ALI

POINT II THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE ON COUNT 1 AS THE STATE FAILED TO SHOW THAT THE DEFENDANT USED A JUVENILE IN A DRUG DISTRIBUTION SCHEME EITHER AS A PRINCIPAL OR AS AN ACCOMPLICE

POINT III THE DEFENDANT DID NOT FULLY UNDERSTAND THE CONSEQUENCES OF HIS DECISION NOT TO ACCEPT THE PLEA OFFERS MADE BY THE STATE (Partially Raised Below)

---

[1] Although the indictment was captioned "employing a juvenile" and included an allegation of "employ[ment]," the judge charged in terms of "using" a juvenile which is also proscribed under the statute.

[2] The judge simultaneously discharged defendant "without improvement" on a violation of probation.

We reverse the conviction for employing a juvenile in a drug distribution scheme (count one) and affirm the remaining convictions and merged sentence thereon.

## I.

On August 6, 1997, at approximately 4:50 p.m., Detective Mark Casey of the Linden Police Department began "a surveillance of the intersection of Charles Street and Union Street" in Linden. Approximately ten minutes later, Casey observed a man he knew as Howard Timmons walking east on Union Street. Mr. Timmons approached the northwest corner of Union and Charles Streets and met with an individual, dressed in a black head rag, with an "E. Smith" Dallas Cowboy number 22 jersey, blue warm up pants with white stripes down the sides, holding a portable radio. This individual was later identified as Naim Lassiter, the defendant. The two engaged in a brief conversation, after which the defendant turned to co-defendant Hassan Ali, who was riding a small chrome bicycle. Defendant spoke briefly to Ali, pointed east on Union Street, and Ali drove off on the bicycle in the same direction.

Defendant and Timmons sat down on the grass by a retaining wall in front of 1105 Charles Street. Detective Casey then observed Timmons hand the defendant currency, the amount of which he could not detect from his vantage point. After approximately five minutes, defendant stood up, walked to the corner, and looked east on Union Street towards St. George Avenue. About two minutes later, K.C. walked up to the defendant, had a brief conversation with him, reached into the top of her blouse, "pulled out vials with blue caps" and handed them to the defendant. Defendant then walked over to where Timmons was seated, "took a couple of vials out of his fist" and handed them to Timmons. Timmons then got up and walked west on Union Street. Defendant and K.C. remained on the corner together.

At this point Detective Casey radioed his backup officers and advised them of his observations. He gave descriptions of the

individuals and their clothing, the direction of travel of Timmons, and location of defendant and K.C. Casey observed defendant put "the remaining product in his mouth," as an unmarked police car containing Officer William Turbett and Sergeant McCue approached him on Union Street. When the car reached the corner of Union and Charles, Detective Casey observed the defendant "remove[ ] the vial from his mouth, pull[ ] the cap off and toss[ ] it to the street." Casey then directed Officer Turbett to the discarded vial, and the officers then placed the defendant and K.C. under arrest. Turbett recovered "a small vial with some white powder in it and also a blue top for the vial." Turbett also recovered $53 in cash from the defendant.

Officer Michael Burnette of the Linden Police Department, was in an unmarked backup police car with Detective Stanecki during the surveillance. They also responded to Detective Casey's call to apprehend the suspects. Burnette saw a man who fit Timmons' description on Union Street, walking quickly with his fist clenched to his side. The officers then made a u-turn and headed towards Timmons. After coming to a stop, they approached Timmons, and Burnette observed that Timmons dropped the objects he was holding and began to run when he saw the police. After a brief chase of about ¼ mile, Officer Burnette caught up to Timmons and placed him under arrest. Burnette subsequently recovered three vials with blue caps, which contained a white substance, from the area where they were dropped by Timmons. All of the vials were analyzed and found to test positively for cocaine.

K.C. testified for the State that she knew both Hassan Ali and the defendant. She further testified that on the day in question she was approached by Ali on Frank Street, and asked to give vials of cocaine to the defendant, in exchange for the promise of money from Ali. She then carried the vials given to her by Ali inside her bra to Charles Street, where she met defendant and gave him the vials. On that date, K.C. was fifteen years old.

Several stipulations were also made at trial. The jury was advised that Hassan Ali had died. Further, the parties agreed to

admit the lab report without testimony. The defendant's birth certificate was also admitted by stipulation.

## II.

We note the absence of any pretrial transcripts. That makes analysis of the third issue difficult. The trial proceedings commence with a reference to certain pretrial proceedings, an "in chambers" discussion the day before, the prior hearing regarding discovery of the surveillance location, and the "plea cut off issue." Defendant's appendix reflects that the State made a plea offer on March 1, 1999 requiring the defendant to plead guilty to employing a juvenile in a drug distribution scheme with a recommendation of an eight-year custodial term with a two and one-half year parole disqualifier. Defendant rejected that offer and did not sign the pretrial memorandum.

The appendix reflects that the State made a second offer on May 24, 1999, which required the defendant to plead guilty to third degree possession with intent to distribute in exchange for a recommendation of a four-year flat custodial term. It was noted on the first day of trial that defendant also rejected that offer and that it had therefore been withdrawn.

Before the trial commenced, defendant's new counsel requested an opportunity for the defendant to enter a guilty plea. Defense counsel submitted that since the court had relieved prior counsel and was "going to permit a motion to suppress" to be considered, "a change of circumstances" warranted relaxation of the plea cut-off. The trial judge acknowledged the change of circumstances, and ruled that defendant could plead to the original offer made by the State. Defendant thereafter proceeded to trial.

We have reservations as to whether the pretrial conference should have been conducted before the pretrial motions were all resolved. See R. 3:9–1(d),(e); R. 3:9–3(g). However, the lack of record prevents our review of the question in any detail, and the trial court agreed there was a "change of circumstances" by virtue of an open motion and removal of defendant's prior counsel, and

the State's first plea offer was resurrected. In any event, our reversal on count one and the inability to retry defendant on that count due to evidentiary insufficiency, *see Greene v. Massey*, 437 *U.S.* 19, 98 *S.Ct.* 2151, 57 *L.Ed.*2d 15 (1978), moots the contention he should now be able to enter a pretrial plea offer.

### III.

 Defendant argues that the trial court erred in denying his post-trial motion for acquittal on count one of the indictment for failure to prove the age of co-defendant Hassan Ali. We are constrained to agree and reverse the conviction.

 Defendant was found guilty of using a juvenile in a drug distribution scheme under *N.J.S.A.* 2C:35–6. That statute provides in part:

> Any person being at least 18 years of age who knowingly uses, solicits, directs, hires or employs a person 17 years of age or younger to violate *N.J.S.* 2C:35–4 or subsection a. of *N.J.S.* 2C:35–5, is guilty of a crime of the second degree ...

The elements of the crime are that (1) defendant was at least eighteen years of age, (2) defendant used, solicited, directed, hired or employed a juvenile to commit or aid in the commission of the crime, (3) defendant acted knowingly, and (4) the person used, solicited, directed, hired or employed was in fact seventeen years of age or younger. *See State v. Collins*, 262 *N.J.Super.* 230, 235, 620 *A.*2d 1051 (App.Div.1993). *See also Model Jury Charges* (Revised April 20, 1998).

The trial judge charged the jury on defendant's liability as a principal and accomplice. *See State v. Hakim*, 205 *N.J.Super.* 385, 501 *A.*2d 159 (App.Div.1985); *N.J.S.A.* 2C:2–6(c), (f). The judge charged, in part, as follows:

> You heard the attorneys use the term "accomplice." I'm going to explain to you what that means first. This accomplice charge I'm going to give you applies to using a juvenile in a drug distribution scheme. The State claims that this defendant is legally responsible for his own criminal conduct because of his own acts or because he acted as an accomplice to Mr. Ali. Well, being responsible for your own acts I think speaks for itself. You're doing everything and you're responsible for what you do. When you're acting as an accomplice, that means

you're acting with somebody else, but you can be held legally responsible for what they do as well.

The State is saying, take your pick as to this defendant under both circumstances. Are you responsible for your own actions or as an accomplice?

The defense is saying he didn't do anything in terms of using this juvenile. He was not involved with her and he was not acting as an accomplice to Mr. Ali. If Mr. Ali did anything, he did it on his own and this defendant did not share a purpose to join in that act of using the juvenile to distribute drugs or help distribute drugs.

. . . .

The State is saying that they were working together, they both used this juvenile in terms of distributing drugs between the two of them so this defendant can sell it.

The defense is saying that didn't occur. That the only person that is involved with this juvenile in any way, shape or form is Mr. Ali and he didn't share the purpose to use the juvenile in a drug distribution scheme.

Our law on accomplice liability means that no only is the person who actually commits the crime responsible for it, but one who is legally accountable as an accomplice is also responsible for it.

The State alleges that the defendant is guilty of the crime of using a juvenile in a drug distribution scheme either as a principal, meaning by his own conduct, or as an accomplice to Mr. Ali.

In order to find the defendant guilty of the charges as an accomplice, the State must prove beyond a reasonable doubt the following: Number one, that Mr. Ali did, in fact, commit the crime of using a juvenile in a drug distribution scheme—and I'll tell you what the elements are later, I'm just explaining now what accomplice liability is. Two, that the defendant, meaning this defendant, did aid or agree to aid him in committing the crime. Three, that this defendant's purpose was to promote or facilitate the commission of that offense, meaning using the juvenile in the drug distribution scheme. Four, that this defendant possessed the same criminal state of mind required to be proven against the person who committed the crime.

. . .

An accomplice may be convicted on proof of the commission of the crime or of his involvement even though the other person, Mr. Ali, is not prosecuted or involved in this trial. In order to convict the defendant as an accomplice, you must find that the defendant had a purpose to participate in a particular crime of using a juvenile in a drug distribution scheme. He must act with a purpose of promoting or facilitating that particular crime.

. . . .

In order to find the defendant guilty, the State must prove the following beyond a reasonable doubt: Number one, that this defendant was at least 18 years of age—the State has offered his birth certificate in evidence and you'll get that in the juryroom with you. As to the second element, the State must prove that the defendant, either as principal or accomplice, used a juvenile to commit the commission of the crime, meaning dealing the drugs, distributing, so the drugs can

go distributed, and here, obviously, we're talking about [K.C.]. Three, the defendant acted knowingly. And four, that the person used, here, [K.C.], was, in fact, 17 years of age or younger at the time.

After the instructions were given defense counsel stated "you can't charge accomplice here" because "[y]ou don't have proof of Hassan Ali's age. The reason [being] he's not employing a juvenile in a drug distribution scheme if he's not 18 or over. There's absolutely no proof." [3] According to defense counsel, "[i]f Ali is using a juvenile to distribute, that is not a separate crime, okay. It's not even an offense. It's a juvenile thing. It's a juvenile adjudication. So my guy can't be [an] accomplice to a crime that doesn't exist."

The judge at first disagreed but became more concerned by the problem after further discussion and in post-verdict motions which were ultimately denied. However, before commencement of deliberations the judge decided to "change the verdict sheet and break it down as accomplice or principal in case this becomes an issue on the appeal." In its special verdict, the jury found that defendant was guilty of using a juvenile in a drug distribution scheme "as an accomplice to Mr. Ali" and not "by his own act." The defendant was found guilty on the remaining counts.

■ *N.J.S.A.* 2C:35–6 was adopted to prevent the "insidious act of employing children in any drug distribution scheme" by an adult. *See 1987 Legislative Commentary, reprinted in* Cannel, *New Jersey Criminal Code Annotated* on *N.J.S.A.* 2C:35–6. The statute is intended to protect children from the acts of adults, and "without proof that the actor who engaged a person seventeen years old or younger in a criminal offense is at least eighteen years old, there is no violation of this statute." *State v. Collins, supra,* 262 *N.J.Super.* at 235, 620 *A.2d* 1051. Hence, in the absence of proof of the required element of age beyond a reason-

---

[3] Defendant did not object to the giving of the accomplice charge when the judge indicated he was going to give the instructions before charging the jury. No issue is raised with respect to this fact, and we do not dwell on it because the proofs had been complete and an element of the offense is in any event involved.

able doubt, a conviction under *N.J.S.A.* 2C:35–6 cannot stand. *Collins, supra,* 262 *N.J.Super.* at 234–35, 620 *A.*2d 1051.[4] *See also State v. Shabazz,* 263 *N.J.Super.* 246, 251–56, 622 *A.*2d 914 (App. Div.), *certif. denied,* 133 *N.J.* 444, 627 *A.*2d 1149 (1993); *State v. Laws,* 262 *N.J.Super.* 551, 560–62, 621 *A.*2d 526 (App.Div.), *certif. denied,* 134 *N.J.* 475, 634 *A.*2d 523 (1993).

There is no dispute that the State offered no proof of the age of Ali at the time of the sale. The State contends that the age of Ali can be implied simply because he "had been charged in the indictment, pled guilty, agreed to testify, but died before the trial." However, while age may be proved by inferences or circumstantial evidence, "the State must prove that defendant was at least eighteen years old to establish defendant's guilt under *N.J.S.A.* 2C:35–6."[5] *Collins, supra,* 262 *N.J.Super.* at 235–36, 620 *A.*2d 1051.

The State further argues that Ali's age is "irrelevant to defendant's guilt as his accomplice." It argues:

In any event, the State submits that codefendant's age was irrelevant to defendant's guilt as his accomplice. For example, had codefendant been a juvenile, and directed [K.C.] to deliver the drugs to defendant, defendant would still be criminally liable for employing a juvenile. While Mr. Ali would not, given this hypothetical, be charged with violating *N.J.S.A.* 2C:35–6, he would have distributed drugs and used [K.C.] to accomplish that end. Accordingly, contrary to defendant's claim that there was no proof codefendant committed any offense, the State overwhelmingly proved the codefendant worked with defendant to distribute drugs for money. Defendant is not relieved of his criminal responsibility for assisting

---

[4] The State, of course, must prove each element of an offense beyond a reasonable doubt. *Apprendi v. New Jersey,* 530 *U.S.* 466, 477, 120 *S.Ct.* 2348, 2356, 147 *L.Ed.*2d 435, 447 (2000); *In re Winship,* 397 *U.S.* 358, 364, 90 *S.Ct.* 1068, 1073, 25 *L.Ed.*2d 368, 375 (1970); *State v. Vick,* 117 *N.J.* 288, 293, 566 *A.*2d 531 (1989); *N.J.S.A.* 2C:1–13a.

[5] We will assume that in certain instances where a juvenile's case cannot be waived to the Law Division age can be assumed from the fact of indictment for some purposes. *See, e.g., N.J.S.A.* 2C:4–11. But the fact judicial notice can be taken for some purposes, does not satisfy the proof requirement at trial, particularly in the absence of an endeavor to have the court take judicial notice. *See N.J.R.E.* 201 as to the taking of judicial notice.

codefendant in the use of [K.C.] because of the lack of direct evidence of codefendant's age.

The State did not have to prove that defendant knew K.C.'s age, *see Laws, supra,* at 561–62, 621 A.2d 526, and we agree with the State and the trial judge's ruling on the post-trial motion for acquittal that age can be proved by inferences or his physical appearance. *See Collins, supra,* at 236, 620 A.2d 1051. But Ali did not appear in court and the State does not assert or show that there was a sufficient description of him to provide a reasonable basis in the evidence from which to infer he was an adult.

The issue is not without difficulty of resolution, *see* I *Model Penal Code and Commentaries,* § 2.06; *Final Report of the New Jersey Criminal Law Revision Commission,* § 2C:2–6, at 57–63, and it may be that under the existing statute requiring the actor to be "at least 18 years of age," an adult cannot be convicted as an accomplice under *N.J.S.A.* 2C:35–6 when he is the only adult in a scheme otherwise involving juveniles. Moreover, the issue is not whether there was enough evidence to convict defendant for possession or distribution of cocaine either as a principal or accomplice. That is beyond dispute. The issue is only whether defendant could be convicted as an accomplice for using a juvenile in a drug distribution scheme. The evidence would certainly support such a conviction as a principal, but the jury specifically rejected that theory. It convicted defendant as an accomplice without proof of the principal's age, and while the co-defendant principal did not have to be prosecuted or convicted of the offense, *see N.J.S.A.* 2C:2–6(f), the State did have to prove that the crime was committed. That required proof that an actor was over eighteen years of age. *See People v. Griffin,* 247 *Ill.App.*3d 1, 186 *Ill.Dec.* 610, 616 *N.E.*2d 1242, 1252 (1993), *cert. denied,* 513 *U.S.* 1060, 115 *S.Ct.* 671, 130 *L.Ed.*2d 604 (1994) (court noting the age of perpetrators of an aggravated sexual assault, "not the age of the one vicariously responsible for that conduct," had to be proven in order to sustain a conviction, but finding evidence sufficient). The fact that one may be convicted as an accomplice of a lesser offense than the principal because of a different culpability or state of

mind, *see, e.g., State v. Bielkiewicz,* 267 *N.J.Super.* 520, 632 *A.*2d 277 (App.Div.1993), does not mean that he or she can be convicted if all the elements of the crime are not proven.

■ The result in this case flows from the lack of proofs and the jury's findings when asked to address whether defendant acted as a principal or an accomplice. *But cf. State v. Roach,* 146 *N.J.* 208, 223, 680 *A.*2d 634 (1996), *cert. denied,* 519 *U.S.* 1021, 117 *S.Ct.* 540, 136 *L.Ed.*2d 424 (1996) (jury need not agree on whether defendant was a principal or accomplice).[6] Once the jury found defendant acted only as an accomplice, the conviction could not stand without proof of Ali's age, a required element under the statute. As there was no proof of Ali's age, there was no proof that the statute had been violated.

## IV.

The judgment of conviction on count one is reversed. The convictions on the other counts and the surviving merged sentence are affirmed.

---

[6] Because the issue is not before us, we do not develop our concern about the use of a verdict sheet in these circumstances. As to its permissible use with respect to facts which affect gradation of the offense or sentencing, see *State v. Diaz,* 144 *N.J.* 628, 643–45, 677 A.2d 1120 (1996); *State v. Lado,* 275 *N.J.Super.* 140, 157–58, 645 A.2d 1197 (App.Div.), *certif. denied,* 138 *N.J.* 271, 649 A.2d 1290 (1994); *R.* 3:19–1(b). *See also State v. Simon,* 79 *N.J.* 191, 398 A.2d 861 (1979).