3 A.3d 634 (2010)
416 N.J. Super. 195
STATE of New Jersey, Plaintiff-Respondent,
v.
Peter TRIESTMAN, Defendant-Appellant.
Docket No. A-3023-09T4
Superior Court of New Jersey, Appellate Division.
Argued January 27, 2010.
Decided September 10, 2010.
*636 Kevin C. Orr, Newark, argued the cause for appellant.
Debra G. Simms, Assistant Prosecutor, argued the cause for respondent (Robert D. Laurino, Acting Essex County Prosecutor, attorney; Ms. Simms, on the brief).
Alison Perrone argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey.
Before Judges CUFF, C.L. MINIMAN and WAUGH.
The opinion of the court was delivered by
MINIMAN, J.A.D.
Defendant Peter Triestman appeals on leave granted from an indictment charging him with fourth-degree criminal sexual contact. We now reverse and remand for further proceedings consistent with this opinion.

I.
Defendant and N.P. were both employed at a furniture store in Newark. Defendant was N.P.'s boss. According to an incident report filed with the Newark Police Department, defendant asked N.P. to prepare a bed at the store so he could place pictures of the bed online to sell it. On May 22, 2008, defendant asked N.P. to examine the bed with him in an upstairs room. Once upstairs, defendant and N.P. began changing the bedding. While doing so, defendant told N.P. that the bed would look better with her laying on it naked. While saying this, defendant moved closer to N.P., placed his left hand on her shoulder, put his right hand on her breast over her clothes, and tried to kiss her. N.P. pulled away from defendant and walked away. She gathered her belongings, punched out her time card, and told her mother, who also worked in the store, that she was leaving. Defendant followed N.P. before she left, apologized for touching her, and told her not to tell anyone.
After leaving, N.P. informed her sister and father about what had happened. She and her sister then retrieved their mother from the store. Later that same evening, defendant called N.P.'s home and informed her and her mother that they were fired. N.P. then filed an incident report. Defendant was subsequently arrested on June 17, 2008five days after the prosecutor authorized the police to charge him with one count of criminal sexual contact.
On September 23, 2008, a grand-jury orientation was held in Newark. The prosecutor read the definitions and provisions of N.J.S.A. 2C:14-1 and N.J.S.A. 2C:13-5 to the grand jury. The prosecutor then read N.J.S.A. 2C:14-2, which outlines sexual-assault offenses. The prosecutor next recited N.J.S.A. 2C:14-3, which defines the elements of criminal sexual contact. Finally, the prosecutor read the statute on criminal restraint, N.J.S.A. 2C:13-2.
The grand-jury hearing for this case was held on December 2, 2008. The prosecutor began by saying: "By way of complaint, the defendant has been charged with one count of fourth[-]degree criminal sexual contact and that's in violation of 2C:14-3(b). Does anyone need me to read the law? Okay. The State is going to be calling [N.P.]." The grand jury then heard the testimony of the alleged victim, including her responses to various questions asked by the jurors. N.P.'s testimony largely mirrored her account in the incident report, except that she testified that defendant, before he moved closer to N.P. and made his comment about her lying on the bed naked, first commented that the bed would look much better if she laid on it. *637 She also testified that she exclaimed "Peter!" when defendant tried to kiss her. The prosecutor concluded the hearing by asking the grand jurors to consider the charge of fourth-degree criminal sexual contact. Essex County Indictment No. 2008-12-3550 was returned on December 9, 2008, charging defendant with fourth-degree criminal sexual contact, contrary to N.J.S.A. 2C:14-3b.[1]
On or about May 4, 2009, defendant filed a notice of motion seeking to dismiss the indictment.[2] Defendant argued that the indictment should be dismissed because the State failed to charge the grand jury with the statutory definition of the alleged crime and the grand-jury presentation was devoid of any evidence that physical force was used by defendant in excess of the minimum physical contact required to achieve criminal sexual contact. After briefing and oral argument, the judge placed his fact-findings and legal conclusions on the record and denied the motion on July 14, 2009.
First, the judge found that the State charged the jury, during the sexual-assault and rape analysis orientation on September 23, 2008, with the elements of fourth-degree criminal sexual contact under N.J.S.A. 2C:14-3b. He also accepted the State's representation that the prosecutor charged the grand jury with the circumstances under N.J.S.A. 2C:14-2c(1) through (4), which constitute one of the elements of fourth-degree criminal sexual contact, although the judge observed that it was unclear whether N.J.S.A. 2C:14-2c was in fact charged. Thus, he rejected defendant's claim that the State failed to charge the grand jury with the statutory definition of the alleged crime. He also did not find it necessary to recharge when the facts were presented to the grand jury on December 2, 2008.
Second, on the alleged absence of any physical force, the judge relied on State in Interest of M.T.S., 129 N.J. 422, 609 A.2d 1266 (1992), and the model charge on criminal sexual contact to conclude "that the simple act of touching the breast itself, the unwanted criminal sexual contact, no further additional force is necessary to meet the element of physical force in the crime of criminal sexual contact." He thus denied the motion to dismiss the indictment.
On August 3, 2009, defendant filed a motion for leave to appeal, which we granted on August 27, 2009. On September 14, 2009, the Law Division granted defendant's motion for a stay of the proceedings pending appeal. On October 23, 2009, we granted the motion of the Association of Criminal Defense Lawyers of New Jersey (ACDL-NJ) for leave to appear as amicus curiae and participate in oral argument.

II.
Defendant raises the following issues for our consideration:
POINT ITHE STATE VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO A GRAND JURY BY FAILING TO INSTRUCT IT AS TO *638 THE LAW OF CRIMINAL SEXUAL CONTACT.
A. THE PROSECUTOR HAS THE DUTY TO CHARGE THE GRAND JURY AS TO THE SPECIFIC OFFENSE TO BE CONSIDERED.
B. THE PROSECUTOR FAILED TO ESTABLISH BY COMPETENT EVIDENCE THAT THE GRAND JURY WAS CHARGED AS TO THE LAW OF CRIMINAL SEXUAL CONTACT.
C. THE PROSECUTOR'S DUTY TO CHARGE THE GRAND JURY IN DEFENDANT'S CASE IS NOT SATISFIED BY PROVIDING COMBINED READINGS ON THE LAWS OF AGGRAVATED SEXUAL ASSAULT, CRIMINAL COERCION, CRIMINAL SEXUAL CONTACT AND CRIMINAL RESTRAINT SOME SEVENTY-SEVEN DAYS EARLIER.
POINT IITHE TRIAL COURT ERRED IN FAILING TO DISMISS THE INDICTMENT WHERE, AS HERE, THE STATE FAILED TO PRESENT EVIDENCE OF PHYSICAL FORCE IN ADDITION TO SEXUAL CONTACT.
A. THE ELEMENT OF "SEXUAL CONTACT" REQUIRES SOME FORCE.
B. THE SECOND ELEMENT OF CRIMINAL SEXUAL CONTACT REQUIRES ADDITIONAL FORCE.
C. THE LEGISLATURE DID NOT INTEND TO EQUATE PHYSICAL FORCE WITH AN ABSENCE OF CONSENT, AND ANY SUCH INTERPRETATION CREATES STATUTORY DISHARMONY AND CAUSES INAPPOSITE RESULTS.
(1) THE ERRONEOUS INTERPRETATION CAUSES INCONGRUENCE BETWEEN PARAGRAPH (c)(1) AND PARAGRAPHS (c)(3) AND (4).
(2) THE ERRONEOUS INTERPRETATION CAUSES INTERNAL INCONGRUENCE WITHIN PARAGRAPH (c)(1).
(3) THE ERRONEOUS INTERPRETATION CAUSES INCONGRUENCE BETWEEN THE CRIMINAL SEXUAL CONTACT AND HARASSMENT STATUTES.
An indictment should only be dismissed on the clearest and plainest grounds, where it is manifestly deficient or palpably defective. State v. Hogan, 144 N.J. 216, 228-29, 676 A.2d 533 (1996). As a result, a prosecutor's decision on how to instruct a grand jury will constitute grounds for challenging an indictment only in exceptional cases. State v. Hogan, 336 N.J.Super. 319, 344, 764 A.2d 1012 (App. Div.), certif. denied, 167 N.J. 635, 772 A.2d 937 (2001). An "indictment should not be dismissed unless the prosecutor's error was clearly capable of producing an unjust result. This standard can be satisfied by showing that the grand jury would have reached a different result but for the prosecutor's error." Ibid.
A decision on whether to dismiss an indictment is left to the sound discretion of the trial judge and will be reversed only for an abuse of discretion. State v. Warmbrun, 277 N.J.Super. 51, 59, 648 A.2d 1153 (App.Div.1994), certif. denied, 140 N.J. 277, 658 A.2d 300 (1995). A trial court decision will constitute an abuse of discretion where "the `decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" United States v. Scurry, 193 N.J. 492, 504, 940 A.2d 1164 (2008) (quoting Flagg v. Essex County Prosecutor, 171 N.J. 561, 571, 796 A.2d 182 (2002)).

*639 III.
Defendant first argues that his constitutional right to a grand jury was violated because the prosecutor failed to instruct the grand jury as to the law of criminal sexual contact. Defendant presents three points in support of this argument. First, he contends that the prosecutor has a duty to charge the grand jury as to the specific offense to be considered, and the prosecutor gave "no instructions whatsoever" to the grand jury. In this regard, defendant seeks model standards for prosecutors to follow in charging grand juries.
Second, defendant argues that the prosecutor failed to present any competent evidence that the grand jury was charged as to the law of criminal sexual contact because the prosecutor did not provide a copy of the grand-jury orientation transcript to the trial court. In his reply brief, defendant continues his objection on this point despite the production of the transcript. According to defendant, the trial court abused its discretion in concluding that the grand jury was properly instructed on the law based on the prosecutor's statements.
Finally, defendant argues that even if the transcript of the orientation is considered, the record nevertheless fails to satisfy the State's burden to "plainly spell out" the governing law because a one-time reading of the criminal code fails to pass constitutional scrutiny. As a corollary, defendant argues that an eleven-week delay between the reading of the statutes to the grand jury and the State's presentation of the charges against him warrants dismissal. Defendant explains, "The grand jury could not possibly be expected to recall the complex particulars of the law of criminal sexual contact provided to it eleven weeks earlier during a single reading of all of the laws of sexual offenses." Defendant urges that the prosecutor "obfuscated the law of criminal sexual contact by giving a hodgepodge reading of all New Jersey sexual offense laws some seventy-seven days before the actual presentation of [the] facts on defendant's matter." Defendant contends that the grand jury was never informed it had a right to request a recharge. Defendant therefore seeks dismissal of the indictment as violative of his state constitutional rights.
The State asserts that the grand jury was properly instructed on the law of criminal sexual contact. The State argues that the grand-jury hearing was conducted with the "utmost fairness" because the grand jury was "fully appraised of all the elements of the charge available for its consideration." The State contends that the prosecutor had discretion to present the charges as she saw fit, and that the record, including the prosecutor's statements to the trial judge and the grand-jury orientation transcript, clearly shows the prosecutor properly instructed the grand jury on the law of criminal sexual contact. The State also avers that defendant's argument regarding the grand jurors' inability to remember the applicable law is "pure speculation" and should be disregarded as such. According to the State, there is no constitutional violation where, as here, the grand jurors are given the opportunity to be recharged and informed of this right and then decline the offer. Finally, the State argues that the eleven-week period between the initial charge and presentation "is of no moment."
The New Jersey Constitution guarantees that "[n]o person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury. . . ." N.J. Const. art. I, ¶ 8. It is the duty of the grand jury to bring to trial individuals who are probably guilty and to clear the innocent of baseless charges. In re Grand Jury Appearance Request by *640 Loigman, 183 N.J. 133, 138, 870 A.2d 249 (2005) (citation omitted). The grand jury "`stand[s] between the defendant and the power of the State, protecting the defendant from unfounded prosecutions.'" Ibid. (quoting State v. Fortin, 178 N.J. 540, 638, 843 A.2d 974 (2004)). Article I, Paragraph 8, "is a constitutional protection that enhances the integrity of the charging process." Id. at 139, 870 A.2d 249. "[T]he grand jury's core purpose is to `determine whether the State has established a prima facie case that a crime has been committed and that the accused has committed it,' and it stands as `the primary security to the innocent against hasty, malicious and oppressive persecution.'" State v. Francis, 191 N.J. 571, 586, 926 A.2d 305 (2007) (quoting Hogan, supra, 144 N.J. at 227-28, 676 A.2d 533 (internal quotations omitted)).
Grand-jury proceedings are presumed valid, and defendants bear the burden of proving prosecutorial error. Id. at 587, 926 A.2d 305 (citations omitted). "Grand jury proceedings are largely controlled by prosecutors, who are charged to use `all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws.'" Ibid. (quoting N.J.S.A. 2A:158-5 and citing Loigman, supra, 183 N.J. at 144, 870 A.2d 249); see also State v. T.C., 347 N.J.Super. 219, 229, 789 A.2d 173 (App.Div.2002) (recognizing a prosecutor's discretion in deciding whether to prosecute and what charges to bring before a grand jury), certif. denied, 177 N.J. 222, 827 A.2d 289 (2003). Imbued with principles of fairness by the Rules of Professional Conduct and case law, a prosecutor has the primary duty of ensuring that justice is done and may not use improper methods calculated to produce a wrongful conviction. Loigman, supra, 183 N.J. at 144, 870 A.2d 249. A prosecutor is obligated to charge the grand jury as to the elements of specific offenses and specific exculpatory defenses. Pressler, Current N.J. Court Rules, comment 1.2 on R. 3:6-3 (2010).
Incomplete or imprecise grand-jury instructions do not necessarily warrant dismissal of an indictment; rather, the instructions must be "blatantly wrong." Hogan, supra, 336 N.J.Super. at 344, 764 A.2d 1012; State v. Laws, 262 N.J.Super. 551, 562, 621 A.2d 526 (App. Div.), certif. denied, 134 N.J. 475, 634 A.2d 523 (1993). In short, an indictment will fail where a prosecutor's instructions to the grand jury were misleading or an incorrect statement of law. State v. Ball, 268 N.J.Super. 72, 119-20, 632 A.2d 1222 (App.Div.1993), aff'd, 141 N.J. 142, 661 A.2d 251 (1995), cert. denied, 516 U.S. 1075, 116 S.Ct. 779, 133 L.Ed.2d 731 (1996); Laws, supra, 262 N.J.Super. at 562-63, 621 A.2d 526.
When the prosecutor charged the grand jury on September 23, 2008, she read the definitions contained in N.J.S.A. 2C:14-1, including the definition of "sexual contact" as follows:
Sexual contact means an intentional touching by the victim or actor, either directly or through clothing of the victim's or actor's intimate parts, for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor. Sexual contact of the actor with himself must be in view of the victim, who the actor knows to be present[.]
Intimate parts means the following body parts: sexual organs, genital area, anal area, inner thigh, groin, buttock, or breast of a person[.]
She also instructed the jury on criminal coercion under N.J.S.A. 2C:13-5, which is concededly not relevant here. Next, she instructed the grand jury on sexual-assault *641 offenses under N.J.S.A. 2C:14-2, including the following on second-degree sexual assault:
An actor is guilty of sexual assault if he commits an act of sexual contact with a victim who is less than 13 years old and the actor is at least four years older than the victim.
An actor is guilty of sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances:
(1) The actor uses physical force or coercion, but the victim does not sustain severe personal injury;
(2) The victim is on probation or parole, or is detained in a hospital, prison, or other institution and the actor has supervisory or disciplinary power over the victim by virtue of the actor's legal, professional, or occupational status;
(3) The victim is at least 16, but less than 18 years old and:
The actor is related to the victim by blood or affinity to the third degree; or
The actor has supervisory or disciplinary power of any nature or any capacity over the victim; or
The actor is a resource family parent, a guardian, or stands in loco parentis within the household;
The victim is at least 13, but less than 16 years old, and the actor is at least four years older than the victim.[3]
Sexual assault is a crime of the second degree.
The prosecutor then charged the grand jury with criminal sexual contact, including the following portion on which defendant was ultimately indicted:
b. An actor is guilty of criminal sexual contact if he commits an act of sexual contact with the victim under any of the circumstances set forth in Section 2C:14-2c through (4).
Criminal sexual contact is a crime of the fourth degree.
Needless to say, even had the prosecutor presented the case against defendant on September 23, 2008, the grand jury could not have applied the law to the facts. First, the prosecutor in the above-quoted passage should have referenced "Section 2C:14-2c(1) through (4)", not "Section 2C:14-2c through (4)." Second, the prosecutor never indicated that she was charging the jury on N.J.S.A. 2C:14-2c at all; she merely informed the jury that she was charging them on "sexual assault." Thus, although the jury knew it had been charged on offenses under N.J.S.A. 2C:14-2, it had no idea which portion of that charge contained the circumstances that would establish criminal sexual contact under N.J.S.A. 2C:14-3.
The misleading effect of this charge was compounded by the passage of more than two months before the prosecutor presented this case. In the interim, the grand jury had considered a variety of sexual and other crimes. The average grand juror could not possibly be expected to recall and apply the elements of any crime, including criminal sexual contact, after such a hiatus. At the very least, the prosecutor on December 12, 2008, should have provided the jury with a written charge on the elements of criminal sexual contact, including relevant definitions and the pertinent portions of N.J.S.A. 2C:14-2c. As a result, the instructions given were so misleading that the indictment cannot stand.[4]Ball, *642 supra, 268 N.J.Super. at 119-20, 632 A.2d 1222.

IV.
In his second point, defendant argues that the trial judge abused his discretion in failing to dismiss the indictment because the State failed to present evidence that defendant used "physical force" in addition to the force required to establish "sexual contact," which itself requires the application of sufficient force for an "intentional touching" to be "tactile," meaning "a light push, strike, tap or nudge." Defendant claims that "because `sexual contact' requires a light push, strike, nudge or tap against N.P.'s breast, additional force is required to satisfy th[e] element" of "physical force," because merely proving that sexual contact occurred is insufficient.[5] Defendant avers that the use of physical force beyond that necessary to achieve a touching is "mandatory, and is not satisfied by equating `force' with the `absence of consent.'" Defendant contends that there is no evidence that he used any force beyond the alleged touching of N.P.'s breast, and the indictment must be dismissed as a result.
Defendant further argues that the phrase "use of physical force" in N.J.S.A. 2C:14-2c(1) does not equate to "lack of consent," and if it did, anomalous results would occur in applying such an interpretation to cases involving the other subsections of N.J.S.A. 2C:14-2c. Defendant further argues that equating "physical force" with "lack of consent" and not requiring an additional physical force renders the word "coercion" meaningless as it appears in N.J.S.A. 2C:14-2c(1), because it would broaden the definition of coercion to include anything negating "freely given" consent. Finally, defendant argues that this interpretation would cause incongruence between the statutes governing criminal sexual contact and harassment. In this regard, defendant asserts that the legislature did not intend for "lack of consent" to be a component of criminal sexual contact. He argues that physical force is inherent in the original touching, and thus an additional amount of force is required to criminalize the sexual contact. Defendant also contends that we should require that the application of additional force result in "bodily injury" for the sexual contact to be criminal.
The ACDL-NJ largely endorses defendant's interpretations of N.J.S.A. 2C:14-2c(1) and N.J.S.A. 2C:14-3b. The ACDL-NJ contends that defendant was wrongfully indicted because there was no allegation of physical force in addition to the mere touching of N.P.'s breast. The ACDL-NJ urges that the rule of M.T.S., supra, 129 N.J. 422, 609 A.2d 1266, should not be extended to criminal sexual contact. It contends that application of the rule in M.T.S. to a rebuffed sexual advance by a person's sexual partner would qualify as criminal sexual contact in the absence of a requirement for some additional physical force beyond mere touching. Finally, the ACDL-NJ argues that the State's position renders criminal sexual contact superfluous to the petty disorderly person offense of harassment. The ACDL-NJ therefore urges dismissal of the indictment.
The State responds that the judge properly denied defendant's motion to dismiss the indictment because the State presented evidence of physical force sufficient to satisfy the statutory requirements. The State submits that the statutory language of criminal sexual contact is clear and unambiguous, and there is no requirement that the State present evidence of physical force in addition to sexual contact, relying *643 on M.T.S., supra, 129 N.J. 422, 609 A.2d 1266. Based on this case, the State concludes that any unauthorized sexual contact is a crime under N.J.S.A. 2C:14-3. The State also cites to M.T.S. to support its conclusion that the Supreme Court has adopted a broad definition of "physical force," and under that definition, defendant's conduct constituted criminal sexual contact. The State further references the model jury charge defining "physical force" to support its conclusion. Contrary to defendant, the State argues that no "disharmony" is caused by equating "physical force" with sexual contact without consent.
The judge denied defendant's challenge to the indictment. He reasoned that the Supreme Court's decision in M.T.S., the legislative history of the Penal Code, and analogous laws compelled a finding that any unauthorized sexual contact constitutes criminal sexual contact. Referencing the model charge on criminal sexual contact and its definition of physical force, the court concluded: "[I]t's clear that the simple act of touching the breast itself, the unwanted criminal sexual contact, no further additional force is necessary to meet the element of physical force in the crime of criminal sexual contact."
N.J.S.A. 2C:14-3 provides in pertinent part as follows: "An actor is guilty of criminal sexual contact if he commits an act of sexual contact with the victim under any of the circumstances set forth in section 2C:14-2c[](1) through (4). Criminal sexual contact is a crime of the fourth degree." N.J.S.A. 2C:14-3b. As to the first element, "sexual contact" is defined in pertinent part as "an intentional touching by the victim or actor, either directly or through the clothing, of the victim's ... intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor...." N.J.S.A. 2C:14-1d. "Intimate parts" means the "sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person." N.J.S.A. 2C:14-1e. As to the second element, the State acknowledges that the pertinent statutory provision in this case is N.J.S.A. 2C:14-2c(1). It provides: "The actor uses physical force or coercion, but the victim does not sustain severe personal injury." The State concedes that defendant did not use coercion, and thus we are concerned only with whether there was prima facie evidence of physical force.
The Code of Criminal Justice does not define "physical force." M.T.S., supra, 129 N.J. at 429, 609 A.2d 1266. These words "do not evoke a single meaning that is obvious and plain," and courts are left to construe the words under New Jersey's established "avenues of construction." Id. at 430-31, 609 A.2d 1266.
The legislative history of N.J.S.A. 2C:14-3b begins in October 1971 when the New Jersey Criminal Law Revision Commission issued its final report in which it engaged in a "complete reexamination of [New Jersey criminal] law." N.J. Law Revision Comm'n, The New Jersey Penal Code Volume I: Report and Penal Code, at v (Oct. 1971) (hereinafter Final Report Volume I). The purpose of the Commission's suggested revisions to the New Jersey Criminal Code was "to modernize the criminal law of this State so as to embody principles representing the best in modern statutory law, to eliminate inconsistencies, ambiguities, outmoded and conflicting, overlapping and redundant provisions and to revise and codify the law in a logical, clear and concise manner." L. 1968, c. 281, § 4.
In drafting its proposed Criminal Code, the Commission used the Model Penal Code (MPC) as "the principle [sic] basis of [its] study." Final Report Volume I, supra, *644 at x. Consistent with this, the Commission's proposed crime of sexual assault, the forerunner to the current crime of criminal sexual contact, was nearly identical in its language to MPC § 213.4, the MPC section governing sexual assault. As is relevant to this discussion, proposed Section 2C:14-4a criminalized certain sexual contact as sexual assault where:
A person who has sexual contact with another not his spouse, or causes such other to have sexual contact is guilty of sexual assault if:
a. he knows that the contact is offensive to the other person; or
....
c. he knows that the other person is unaware that a sexual act is being committed[.]
[Id. at 62.]
Sexual assault under either of these two sections was a disorderly person offense.[6]Id. at 63. Finally, "sexual contact" was defined as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire." Ibid. The Commission explained that the term was "so defined as to require an actual touching." N.J. Law Revision Comm'n, The New Jersey Penal Code Volume II: Commentary, at 200 (Oct. 1971).
In addition to the Commission's final report, various governmental bodies issued six other reports addressing the topic of a new penal code. Public hearings on the proposed code were also held on June 20 and 27, 1972, and March 10, 1975. The Governor's Counsel compiled a file on the proposed code as well. Despite this wealth of information, none of it reveals any consideration of a crime of criminal sexual contact in the period between the Commission's proposal in 1971 and the developments of 1978.
On January 26, 1978, Senate Bill 738 was introduced in the State Senate; this was the first introduction of a bill proposing the new Criminal Code. S. 738, 198th Leg., 1st Sess. (N.J. 1978). This version of the bill did not include a crime of criminal sexual contact. Ibid. The bill generally maintained the Commission's proposed language for the crime of sexual assault; however, it added an additional condition under which sexual contact would be criminal and amended the Commission's definition of sexual contact. Ibid. The additional subsection criminalized sexual contact where "[u]nder the circumstances, [the actor] should have known that sexual contact would be offensive to the other person." Ibid. The new definition of sexual contact read: "Sexual contact is any touching of the human genitals, pubic region, or female breast of another person." Ibid.
The next verifiable action on Senate Bill 738 occurred on May 11, 1978, when additional amendments to the bill were introduced. S. 738, 198th Leg., 1st Sess. (N.J. 1978). On this date, the Senate for the first time proposed inclusion of the crime of "criminal sexual contact" in the new Criminal Code. Ibid. The proposed statute, located at N.J.S.A. 2C:14-3b, read: "An actor is guilty of criminal sexual contact if he commits an act of sexual contact with the victim under any of the circumstances set forth in section 2C:14-2b[](1)-(4).[[7]] *645 Criminal sexual contact is a crime of the fourth degree." Ibid. This version of N.J.S.A. 2C:14-3b is what would later be formally enacted. As a result, the only distinguishing feature between criminal sexual assault and criminal sexual contact is the presence or absence of penetration. Otherwise, they are identical.
On May 15, 1978, the Senate Judiciary Committee released a statement accompanying these amendments in which it gave an overview of the various chapters of the new Criminal Code. Senate Judiciary Committee Statement to S. 738 (May 15, 1978). Regarding Chapter 14, which governs sexual offenses, the Committee outlined four categories of sexual offenses: aggravated sexual assault; sexual assault; aggravated criminal sexual contact; and criminal sexual contact. Id. at 5. The Committee then stated:
The category that a particular fact situation falls among these four offenses is dependent on the following:
the actual sexual acts committed;
the amount of force and physical injury involved in the offense;
the age of [the] victim and sometimes the age of the accused ...;
the mental state of [the] victim ...; and
the relationship of the accused vis-à-vis the victim....
It should also be noted with regard to these offenses that they are defined to cover both homosexual and heterosexual situations and that these definitions are intended to focus on the actions of the accused rather than on behavior of the victim.

[Ibid. (emphasis added).]
Senate Bill 738 gained final approval on August 10, 1978. S. 738, 198th Leg., 1st Sess. (N.J. 1978). The new Criminal Code was enacted pursuant to L. 1978, c. 95, and it was effective September 1, 1979. N.J.S.A. 2C:98-4.
The final version of the Code as enacted in 1978 included the crime of criminal sexual contact as proposed in May 1978. The four circumstances that N.J.S.A. 2C:14-3b incorporated from Section 2C:14-2b were:
(1) The actor uses physical force or coercion, but the victim does not sustain severe personal injury;
(2) The victim is one whom the actor knew or should have known was physically helpless, or mentally incapacitated;
(3) The victim is on probation or parole, or is detained in a hospital, prison or other institution or is mentally defective and the actor has supervisory or disciplinary power over the victim by virtue of the actor's legal, professional or occupational status;

*646 (4) The victim is at least 16 but less than 18 years old and the actor is a member of the victim's household with supervisory or disciplinary power over the victim.
[L. 1978, c. 95, § 2C:14-2b.]
The definition of "sexual contact" was also amended at this time. The definition as enacted in 1978 and effective as of September 1, 1979, stated:
"Sexual contact" means an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor. Sexual contact of the actor with himself must be in view of the victim whom the actor knows to be present[.]
[L. 1978, c. 95, § 2C:14-1d.]
N.J.S.A. 2C:14-3 has been amended only twice since 1978: once in 1979, L. 1979, c. 178 § 27; and again in 1997, L. 1997, c. 194, § 2. In 1979, the statute was amended "to provide that an act of sexual contact where the victim is at least 13 but less than 16 years of age and the accused is at least 4 years older than the victim constitutes criminal sexual contact, a crime of the fourth degree." L. 1979, c. 178 § 27. At this time, subsection b of N.J.S.A. 2C:14-2, to which N.J.S.A. 2C:14-3b referred, became subsection c due to the insertion of a new subsection in N.J.S.A. 2C:14-2.
The 1997 amendment changed the number references to N.J.S.A. 2C:14-2c (as contained in N.J.S.A. 2C:14-3b) to reflect new numbering in N.J.S.A. 2C:14-2c. This was done because the Legislature eliminated the circumstance where "[t]he victim is one whom the actor knew or should have known was physically helpless, or mentally incapacitated." L. 1978, c. 95, § 2C:14-2b(2). With the elimination of that circumstance from N.J.S.A. 2C:14-2c and the concomitant renumbering of N.J.S.A. 2C:14-2c, the Legislature needed to amend N.J.S.A. 2C:14-3b for consistency in cross-referencing. Notably, the elimination of this circumstance also eliminated a circumstance under which sexual contact would be violative of the law. No other amendment to the text of N.J.S.A. 2C:14-3b was made at this time or has been made since.
The Supreme Court had occasion to consider this legislative history in M.T.S., supra, 129 N.J. 422, 609 A.2d 1266. There, the issue under N.J.S.A. 2C:14-2c(1) was "whether the element of `physical force' is met simply by an act of non-consensual penetration involving no more force than necessary to accomplish that result." Id. at 425, 609 A.2d 1266. The juvenile "engaged in consensual kissing and heavy petting with a fifteen-year-old girl and thereafter engaged in actual sexual penetration of the girl to which she had not consented." Ibid. There was no evidence of any extra force or threats to accomplish penetration. Ibid.
The Court observed, "an unconstrained reading of the statutory language indicates that both the act of `sexual penetration' and the use of `physical force or coercion' are separate and distinct elements of the offense." Id. at 429, 609 A.2d 1266. The trial court concluded that physical force was established by the penetration without consent; we believed the statute required some force beyond mere penetration. Id. at 430, 609 A.2d 1266. The parties offered two alternative understandings of the statute. Ibid. The Court commented that "[r]esort to common experience or understanding does not yield a conclusive meaning." Ibid.
With no obvious and plain meaning apparent, the Court sought

*647 the underlying intent of the legislature, relying on legislative history and the contemporary context of the statute. Monmouth County v. Wissell, 68 N.J. 35, 41-42 [342 A.2d 199] (1975). With respect to a law, like the sexual assault statute, that "alters or amends the previous law or creates or abolishes types of actions, it is important, in discovering the legislative intent, to ascertain the old law, the mischief and the proposed remedy." Grobart v. Grobart, 5 N.J. 161, 166 [74 A.2d 294] (1950); accord Key Agency v. Continental Casualty Co., 31 N.J. 98 [155 A.2d 547] (1959) (noting that ambiguous statutory phrases should be interpreted in light of the occasion and necessity of the law, mischief felt, and remedy in view). We also remain mindful of the basic tenet of statutory construction that penal statutes are to be strictly construed in favor of the accused. Nevertheless, the construction must conform to the intent of the Legislature. See State v. Des Marets, 92 N.J. 62, 68-70 [455 A.2d 1074] (1983); State v. Brown, 22 N.J. 405 [126 A.2d 161] (1956).
[Id. at 431, 609 A.2d 1266.]
The Court then engaged in a lengthy and thorough analysis of the history of the adoption of New Jersey's current law on sexual offenses, starting with English common law, calls for its reform, and the enactment of the current statutory framework. Id. at 431-47, 609 A.2d 1266.
After commenting that "the Legislature placed primary emphasis on the assaultive nature of the crime," id. at 442, 609 A.2d 1266, the Court observed:
The Legislature's concept of sexual assault and the role of force was significantly colored by its understanding of the law of assault and battery. As a general matter, the criminal battery is defined as "the unlawful application of force to the person of another." 2 Wayne LaFave & Austin Scott, Criminal Law, § 7.15 at 301 (1986). The application of force is criminal when it results in either (a) physical injury or (b) an offensive touching. Id. at 301-02. Any "unauthorized touching of another [is] a battery." Perna v. Pirozzi, 92 N.J. 446, 462 [457 A.2d 431] (1983). Thus, by eliminating all references to the victim's state of mind and conduct, and by broadening the definition of penetration to cover not only sexual intercourse between a man and a woman but a range of acts that invade another's body or compel intimate contact, the Legislature emphasized the affinity between sexual assault and other forms of assault and battery.
The intent of the Legislature to redefine rape consistent with the law of assault and battery is further evidenced by the legislative treatment of other sexual crimes less serious than and derivative of traditional rape. The Code redefined the offense of criminal sexual contact to emphasize the involuntary and personally-offensive nature of the touching. N.J.S.A. 2C:14-1(d). Sexual contact is criminal under the same circumstances that render an act of sexual penetration a sexual assault, namely, when "physical force" or "coercion" demonstrates that it is unauthorized and offensive. N.J.S.A. 2C:14-3(b). Thus, just as any unauthorized touching is a crime under traditional laws of assault and battery, so is any unauthorized sexual contact a crime under the reformed law of criminal sexual contact, and so is any unauthorized sexual penetration a crime under the reformed law of sexual assault.
[Id. at 442-43, 609 A.2d 1266.]
The Court then reasoned that interpreting the crime of sexual assault "to require physical force in addition to that entailed *648 in an act of involuntary or unwanted sexual penetration would be fundamentally inconsistent with the legislative purpose to eliminate any consideration of whether the victim resisted or expressed non-consent." Id. at 443, 609 A.2d 1266. The Court rejected a requirement that "the element of force need be extrinsic to the sexual act" because it "would not only reintroduce a resistance requirement into the sexual assault law, but also would immunize many acts of criminal sexual contact short of penetration." Id. at 444, 609 A.2d 1266. The Court stated,
The characteristics that make a sexual contact unlawful are the same as those that make a sexual penetration unlawful. An actor is guilty of criminal sexual contact if he or she commits an act of sexual contact with another using "physical force" or "coercion." N.J.S.A. 2C:14-3(b). That the Legislature would have wanted to decriminalize unauthorized sexual intrusions on the bodily integrity of a victim by requiring a showing of force in addition to that entailed in the sexual contact itself is hardly possible.
[Ibid.]
The Court recognized that "the standard defining the role of force in sexual penetration must prevent the possibility that the establishment of the crime will turn on the alleged victim's state of mind or responsive behavior." Ibid. This led the Court to conclude that:
any act of sexual penetration engaged in by the defendant without the affirmative and freely-given permission of the victim to the specific act of penetration constitutes the offense of sexual assault. Therefore, physical force in excess of that inherent in the act of sexual penetration is not required for such penetration to be unlawful. The definition of "physical force" is satisfied under N.J.S.A. 2C:14-2c(1) if the defendant applies any amount of force against another person in the absence of what a reasonable person would believe to be affirmative and freely-given permission to the act of sexual penetration.
[Ibid.]
The Court observed that "under assault and battery doctrine, any amount of force that results in either physical injury or offensive touching is sufficient to establish a battery." Id. at 445, 609 A.2d 1266. The Court, therefore, concluded as follows:
That understanding of the crime of sexual assault fully comports with the public policy sought to be effectuated by Legislature. In redefining rape law as sexual assault, the Legislature adopted the concept of sexual assault as a crime against the bodily integrity of the victim. Although it is possible to imagine a set of rules in which persons must demonstrate affirmatively that sexual contact is unwanted or not permitted, such a regime would be inconsistent with modern principles of personal autonomy. The Legislature recast the law of rape as sexual assault to bring that area of law in line with the expectation of privacy and bodily control that long has characterized most of our private and public law. See Hennessey v. Coastal Eagle Paint [Point] Oil Co., 129 N.J. 81, 94-96 [609 A.2d 11] (1992) (recognizing importance of constitutional and common-law protection of personal privacy); id. at 106 [609 A.2d 11] (Pollock, J., concurring) (emphasizing that common-law right of privacy protects individual self-determination and autonomy). In interpreting "physical force" to include any touching that occurs without permission we seek to respect that goal.
[Id. at 445-46, 609 A.2d 1266.]
The Court determined that any other interpretation of the law "would directly undermine *649 the goals sought to be achieved by its reform." Id. at 447, 609 A.2d 1266.
The Supreme Court again addressed "physical force" in State v. Thomas, 166 N.J. 560, 767 A.2d 459 (2001). The defendant pled guilty to second-degree sexual assault. Id. at 563, 767 A.2d 459. We held that "physical force" as used in the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, requires an "independent act of force or threat of force against the victim that is additional to the constituent elements of the crime." State v. Thomas, 322 N.J.Super. 512, 516, 731 A.2d 532 (App. Div.1999), aff'd, 166 N.J. 560, 767 A.2d 459 (2001), superseded on other grounds by statute, L. 2001, c. 129 (codified at N.J.S.A. 2C:43-7.2), as recognized in State v. Parolin, 171 N.J. 223, 232, 793 A.2d 638 (2002). We also concluded that "physical force" in NERA meant "force used to overcome a lack of consent, and which is a separate force ... independent from the `simple' act of the sexual touching, or just the very act of penetration as in the case of M.T.S." Thomas, supra, 322 N.J.Super. at 520, 731 A.2d 532.
The Supreme Court considered whether NERA applied to second-degree sexual assault. Thomas, supra, 166 N.J. at 563, 767 A.2d 459. To resolve that issue, the Court needed to "interpret the meaning of the term `physical force' as used in NERA." Ibid. The Court first noted that it is permissible to interpret an imprecise term differently in two different sections of a statute where those sections have different purposes. Id. at 568, 767 A.2d 459. The Court then stated that because M.T.S. focused on defining an element of a charged offense and NERA was enacted to enhance the severity of punishments for certain offenses, it believed the Legislature intended to ascribe a different meaning to "physical force" as used in NERA than provided in M.T.S. Id. at 568-69, 767 A.2d 459. The Court affirmed our decision, holding that where the elements of the sexual offense charged do not contain a NERA factor, the State must prove an additional independent act of force or violence or a separate threat of immediate physical force to satisfy the NERA factor. Id. at 574, 767 A.2d 459.
Although the only distinguishing fact between sexual assault and criminal sexual contact is the fact of penetration, defendant and the ACDL-NJ argue that "physical force" pursuant to N.J.S.A. 2C:14-2c(1) should not be governed by the dicta of M.T.S. respecting its incorporation by reference in N.J.S.A. 2C:14-3b. Instead, they urge that the State must prove defendant used some physical force beyond the mere sexual contact. They relied on one of our unpublished decisions imposing such an additional requirement based on language in Thomas, supra, 322 N.J.Super. at 515, 731 A.2d 532, where we noted that M.T.S. was "inapposite" to the facts presented because "[M.T.S.] involved an act of sexual penetration ... and the Court, in construing the phrase `physical force' ... concluded that, under the circumstances, just the very force of penetration ... was sufficient to satisfy the physical force element of second degree sexual assault."
The context in which we found M.T.S. inapposite was a dispute over whether a sexual assault upon a minor in violation of N.J.S.A. 2C:14-2b constituted a "violent crime" under NERA. Id. at 514, 731 A.2d 532. As noted above, we concluded that some physical force in additional to the sexual contact was required to trigger application of NERA. Id. at 519, 731 A.2d 532 (construing N.J.S.A. 2C:43-7.2d, which provides that "`[v]iolent crime' also includes any aggravated sexual assault or sexual assault in which the actor uses, or threatens the immediate use of, physical force"). Thus, we are here satisfied that *650 the unpublished decision on which defendant and the ACDL-NJ rely is not persuasive and Thomas does not stand for the proposition for which it has been cited.
We conclude that the judge did not abuse his discretion in denying defendant's motion to dismiss the indictment based on his entirely correct interpretation and application of M.T.S. Indeed, M.T.S. is controlling here. The Supreme Court specifically stated that sexual contact is criminal when "physical force" demonstrates that it is unauthorized and offensive, and any unauthorized sexual contact is a crime under the law of criminal sexual contact. M.T.S., supra, 129 N.J. at 443, 609 A.2d 1266. Contrary to defendant's argument here, the Court rejected the concept that "physical force" in addition to the sexual contact is required for sexual contact to be criminal. Id. at 443-44, 609 A.2d 1266. Perhaps most salient is the Supreme Court's reasoning that an interpretation of the statute requiring "physical force" extrinsic from and independently additional to the sexual act would "immunize many acts of criminal sexual contact short of penetration," and that "[t]he characteristics that make a sexual contact unlawful are the same as those that make a sexual penetration unlawful." Id. at 444, 609 A.2d 1266. Its opinion in Thomas does not trump M.T.S.
Defendant also contends that N.J.S.A. 2C:14-3b, the statute governing the crime of fourth-degree criminal sexual contact, must be construed to harmonize with the statutes governing harassment, N.J.S.A. 2C:33-4, and simple assault, N.J.S.A. 2C:12-1. In his brief, defendant discusses and analyzes N.J.S.A. 2C:14-3b in the specific context of N.J.S.A. 2C:33-4b in an attempt to show that disharmony between the statutes would exist if N.J.S.A. 2C:14-3b is not found to require physical force in addition to sexual contact. At oral argument on January 27, 2010, defense counsel again expounded on this issue, essentially arguing that a hierarchy exists among the three above-cited statutes. At the bottom of the hierarchy is the petty disorderly person offense of harassment and its prohibition on offensive touching. Next comes the disorderly person offense of simple assault and its penalization for causing bodily injury. Last is fourth-degree criminal sexual contact and its criminalization of sexual contact under certain circumstances.
In pertinent part, N.J.S.A. 2C:33-4b reads: "[A] person commits a petty disorderly person offense if, with purpose to harass another, he ... [s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so[.]" Also in pertinent part, N.J.S.A. 2C:12-1a reads: "A person is guilty of assault if he: (1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another[.]"
These crimes do not constitute a hierarchy. We have found that simple assault is not an offense included within sexual assault or criminal sexual contact. State v. Queen, 221 N.J.Super. 601, 606, 535 A.2d 539 (App.Div.), certif. denied, 110 N.J. 506, 541 A.2d 1367 (1988). We found that the bodily-injury element of simple assault is missing from the proof required to establish sexual assault or criminal sexual contact. Ibid. A similar result would likely be reached with harassment, because the purpose to harass element is not present in sexual assault and criminal sexual contact. We find that disharmony among these statutes is not caused by following M.T.S. when considering the evidence necessary to make out a prima facie case of criminal sexual contact. Even if that conclusion is in error, here some additional physical force can be inferred from defendant's act of first placing his hand on the victim's *651 shoulder before he put his other hand on her breast and attempted to kiss her. He is not entitled to have the indictment dismissed on this ground.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] The indictment states that defendant committed an act of criminal sexual contact upon N.P. "contrary to the provisions of N.J.S. 2C:14-3b(1)." Defendant points out that N.J.S.A. 2C:14-3b does not have any such subsections; the State asserts that the "(1)" is clearly a reference to N.J.S.A. 2C:14-2c(1). Defendant does not present this as a challenge to the indictment on appeal.
[2] Defendant also challenged the prosecutor's denial of his application for admission into the Essex County Pretrial Intervention Program. The trial court denied this challenge, and that decision is not before us.
[3] The prosecutor failed to preface this paragraph by indicating that it was the fourth circumstance giving rise to commission of a sexual assault.
[4] We are referring this issue to the Criminal Practice Committee for its consideration.
[5] Defendant cites an unpublished Appellate Division opinion for this proposition.
[6] Proposed subsections 2C:14-4b and -4d through -4h are largely irrelevant to this case. Proposed subsection 2C:14-4b involved victims suffering from mental diseases or defects. Id. at 62. Proposed subsections 2C:14-4d, -4f, and -4g involved the victim's age. Ibid. Proposed subsection 2C:14-4e dealt with the person administering drugs to the victim without the victim's knowledge. Ibid. Proposed subsection 2C:14-4h involved the victim being in custody or otherwise detained in an institution. Ibid.
[7] N.J.S.A. 2C:14-2b, now N.J.S.A. 2C:14-2c, currently provides as follows:

c. An actor is guilty of sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances:
(1) The actor uses physical force or coercion, but the victim does not sustain severe personal injury;
(2) The victim is on probation or parole, or is detained in a hospital, prison or other institution and the actor has supervisory or disciplinary power over the victim by virtue of the actor's legal, professional or occupational status;
(3) The victim is at least 16 but less than 18 years old and:
(a) The actor is related to the victim by blood or affinity to the third degree; or
(b) The actor has supervisory or disciplinary power of any nature or in any capacity over the victim; or
(c) The actor is a resource family parent, a guardian, or stands in loco parentis within the household;
(4) The victim is at least 13 but less than 16 years old and the actor is at least four years older than the victim.
Sexual assault is a crime of the second degree.