**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5746-17T4
               A-5796-17T4

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

TELQUAN ADAMS,

      Defendant-Respondent.

_____

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

MARK RUFFIN, JR.,

      Defendant-Respondent.

_____

Argued February 6, 2019 – Decided March 8, 2019

Before Judges Ostrer, Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment Nos. 17-09-1317 and 18-04-0480.

Monica L. do Outeiro, Assistant Prosecutor, argued the cause for appellant (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Monica L. do Outeiro, of counsel and on the briefs).

Zachary G. Markarian, Assistant Deputy Public Defender, argued the cause for respondent Telquan Adams (Joseph E. Krakora, Public Defender, attorney; Zachary G. Markarian, of counsel and on the brief).

Andrew T. Walsh argued the cause for respondent Mark Ruffin (Chamlin, Rosen, Uliano, & Witherington, attorneys; Charles J. Uliano and Andrew T. Walsh, on the brief).

PER CURIAM

In these back-to-back appeals, consolidated for purposes of this opinion, the State of New Jersey appeals from an August 3, 2018 order dismissing indictments for armed robbery, N.J.S.A. 2C:15-1, against defendants Telquan Adams (Adams) and Mark Ruffin (Ruffin).[1] We affirm dismissal of the indictment as to Adams and reverse dismissal of the indictment as to Ruffin.

---

[1] Judgments of dismissal were entered on August 8, 2018.

This case arises from a botched drug deal. Defendants went to an apartment in Asbury Park to buy prescription drugs from N.F.[2] After discussing the buy with defendants, N.F. changed her mind and decided not to sell the drugs. Adams then grabbed the drugs from N.F. and attempted to flee the apartment. N.F. gave chase and wrestled with Adams. During the struggle between Adams and N.F., Ruffin drew a gun, pointed the gun at N.F., and pulled the trigger multiple times. However, the gun failed to discharge. As Ruffin fled the apartment, N.F.'s mother entered the fray and beat Adams with her cane. Eventually, Adams managed to run out of the apartment. N.F.'s brother followed Adams and Ruffin and saw the men get into a waiting car. Ruffin pointed the gun at N.F.'s brother from the back seat of the car.

The police were dispatched to N.F.'s apartment in response to a report of an armed robbery. The officers interviewed N.F., her brother, and her mother. Originally, N.F. told the police that Adams and Ruffin stole $150 cash. She failed to tell the officers that defendants came to her apartment to buy drugs and stole the drugs, not cash. Eventually, N.F. explained defendants were in her apartment to buy drugs, but maintained the rest of her statement to the police was truthful.

---

[2] We use initials to protect the identity of the victim and her immediate family.

The police also interviewed N.F.'s brother and mother, and both corroborated N.F.'s version of the events. When the police showed N.F. a photo array, she identified Adams and Ruffin as the men in her apartment.

The police subsequently arrested Ruffin. After waiving his Miranda[3] rights, Ruffin admitted he and Adams went to N.F.'s apartment to buy drugs. Ruffin confirmed Adams grabbed the drugs from N.F. Ruffin denied having a gun, and the police never recovered a gun or the drugs.

On September 7, 2017, the State presented the matter to a grand jury. The assistant prosecutor told the grand jurors that defendants were charged with armed robbery, N.J.S.A. 2C:15-1, unlawful possession of a weapon, N.J.S.A. 2C:39-5B(1), and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4A(1). The State presented a detective who testified about the armed robbery based on statements to the police by N.F., her brother, her mother, and Ruffin.

On September 21, 2017, the grand jury indicted defendants on the armed robbery charge only. Defendants filed motions to dismiss the indictments. The judge granted the motions, concluding the State failed to provide sufficient evidence that defendants threatened N.F. with serious bodily injury. The judge

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

A-5746-17T4

reasoned the grand jury's "no bill" on the weapons charges meant the State failed to provide sufficient evidence to find "defendants were armed with, used, or threatened the immediate use of a deadly weapon."

A few days after the judge's dismissal of the indictments, the State re-presented the case to another grand jury. In the re-presentment, the State pursued only the armed robbery charge against defendants. The State called the same detective, who gave testimony similar to that presented to the first grand jury.

In the grand jury re-presentment, the assistant prosecutor addressed each defendant's culpability. The assistant prosecutor gave the grand jurors the following instruction:

> if you are [a] participant in a crime, you are responsible for the consequences of the people that you're with . . . . Let's talk about a standard bank robbery, like what you see on TV. . . . And two people . . . elect to commit this robbery. And I'm going to drive and the person I'm with is going to go into the bank armed with a gun, and they're going to rob the bank . . . . We get to the scene, we get to the bank, the robbery happens, and we're caught. From a legal perspective, being a participant, an actor I am responsible just as much as the person with the gun for that crime. I'm responsible even to the point of what are called foreseeable consequences. For example, let's say that we plan a robbery. We go to the bank . . . . You go into the bank with a weapon and you end up shooting the security guard. And you kill him. Now you come out, we get caught. My involvement,

my participation was, bank robber. I in no way knew that she would shoot the security guard. However, going into a bank to rob it, armed with a weapon, is a reasonably foreseeable consequence of your actions.

On April 12, 2018, the grand jury indicted both defendants on the armed robbery charge.

Defendants filed motions to dismiss the second indictment. On August 3, 2018, the judge again dismissed the indictments. The judge explained the facts in the second grand jury presentment were identical to the first grand jury presentment. The judge concluded the second indictment failed for the same reasons as the first indictment.

On appeal, the State argues the judge erred in dismissing the indictments against defendants because: (1) the judge erroneously believed the gun used in the armed robbery was necessary evidence for an indictment; (2) the judge incorrectly attached legal significance to the first grand jury's inconsistent finding of no probable cause regarding the weapons possession charges in the first grand jury presentment; and (3) the judge failed to accord all reasonable inferences in favor of the State based on the evidence presented to the grand jury.

We review a trial court's dismissal of an indictment for abuse of discretion. State v. Tringali, 451 N.J. Super. 18, 27 (App. Div. 2017) (citing

6

State v. Gruber, 362 N.J. Super. 519, 527 (App. Div. 2003)).  "A trial court decision will constitute an abuse of discretion where 'the decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  State v. Triestman, 416 N.J. Super. 195, 202 (App. Div. 2010) (alteration in original) (quoting United States v. Scurry, 193 N.J. 492, 504 (2008)).  "When the decision to dismiss relies on a purely legal question, however, we review that determination de novo."  State v. Twiggs, 233 N.J. 513, 532 (2018).  We must ensure the trial court employed the correct legal standard in dismissing the indictment.  State v. Abbati, 99 N.J. 418, 436 (1985).

"Once the grand jury has acted, an 'indictment should be disturbed only on the clearest and plainest ground,' and only when the indictment is manifestly deficient or palpably defective."  State v. Hogan, 144 N.J. 216, 228–29 (1996) (quoting State v. Perry, 124 N.J. 128, 168 (1991)).  We "should not disturb an indictment if there is some evidence establishing each element of the crime to make out a prima facie case."  State v. Morrison, 188 N.J. 2, 12 (2006).

7

Applying our standard of review to the dismissal of the indictment against Adams, we are satisfied the dismissal was proper, but do so for reasons other than those expressed by the judge.[4]

"A prosecutor must charge the grand jury 'as to the elements of specific offenses.'" State v. Eldakroury, 439 N.J. Super. 304, 309 (App. Div. 2015) (quoting Triestman, 416 N.J. Super. at 205). "[A]n indictment will fail where a prosecutor's instructions to the grand jury were misleading or an incorrect statement of law." Ibid. A grand jury instruction must not "relieve[] the State of the burden of proving defendant's mens rea as to an essential element of the offense." Eldakroury, 439 N.J. Super. at 309. If an instruction relieves the State of that burden, it is "blatantly wrong and warrant[s] dismissal of the indictment." Ibid.[5]

_____

[4] We affirm or reverse judgments and orders, not reasons. State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (citing Isko v. Planning Bd. of Twp. of Livingston, 51 N.J. 162, 175 (1968)). A correct result, even if grounded on an erroneous basis in fact or in law, will not be overturned on appeal. See GNOC, Corp. v. Dir., Div. of Taxation, 328 N.J. Super. 467, 474 (App. Div. 2000) (citing Ellison v. Evergreen Cemetery, 266 N.J. Super. 74, 78 (App. Div. 1993)).

[5] During oral argument, the State cited State v. Hakim, 205 N.J. Super. 385, 388 (App. Div. 1985) for the proposition that an indictment need not specifically include "accomplice liability." While we agree the indictment against Adams need not "allege accomplice liability as a prerequisite," id., nothing in Hakim relieves the State of its obligation to provide proper instructions to the grand jury.

The robbery statute provides:

> a. Robbery defined. A person is guilty of robbery if, in the course of committing a theft, he:
>
> (1) Inflicts bodily injury or uses force upon another; or
>
> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
>
> (3) Commits or threatens immediately to commit any crime of the first or second degree.
>
> An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.
>
> b. Grading. Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.
>
> [N.J.S.A. 2C:15-1.]

"Whether a defendant is a principal or an accomplice, the State must prove [the defendant] possessed the mental state necessary to commit the offense." State v. Whitaker, 200 N.J. 444, 458 (2009) (citing N.J.S.A. 2C:2-2(a)). "An accomplice is only guilty of the same crime committed by the principal if he shares the same criminal state of mind as the principal." Ibid. (citing State v. White, 98 N.J. 122, 129 (1984)). There is a distinction in the law between a

defendant who shared the purpose to commit a robbery with a deadly weapon and a defendant who shared only the purpose to commit robbery. If a defendant shared the purpose to commit a robbery, but not the purpose to use a deadly weapon, then the defendant would be guilty of robbery rather than armed robbery. See State v. Hammock, 214 N.J. Super. 320, 322 (App. Div. 1986).

Here, the assistant prosecutor informed the grand jury that they could indict Adams for armed robbery simply because he was a "participant." He told the grand jurors that "[f]rom a legal perspective, being a participant, an actor [is] responsible just as much as the person with the gun for that crime."

Having reviewed the record, we are satisfied the assistant prosecutor incorrectly instructed the grand jury that Adams was not required to have the purpose to commit a robbery with a weapon as long Adams was a participant.

The grand jury asked the assistant prosecutor to explain "each of the men's roles in the case." The State failed to explain that, to indict Adams for armed robbery, the grand jury had to determine Adams possessed the purpose to commit a robbery with a weapon. The instruction given by the assistant prosecutor, stating the grand jury need only find Adams was a "participant," improperly relieved the State of its burden of proof as to the required mens rea for an indictment against Adams on the armed robbery charge. Because the

10

instruction provided to the grand jury was an incorrect statement of the law, dismissal of the indictment as to Adams was proper.

Applying our standard of review to the judge's dismissal of the indictment against Ruffin, we reach a different conclusion. The judge's dismissal of that indictment was erroneous because the State presented some evidence Ruffin aided in the theft of the drugs and attempted to use a deadly weapon during the theft.

"Committing or attempting to commit a theft is a necessary element of the crime of robbery." Whitaker, 200 N.J. at 459 (citing State v. Farrad, 164 N.J. 247, 257 (2000)). A person is guilty of theft if "he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof." N.J.S.A. 2C:20-3(a). "[A]ssaultive or intimidating conduct necessary to elevate theft to robbery somehow must be related to the theft itself. If such assaultive or intimidating conduct occurs 'in immediate flight after the attempt or commission' of the theft, then what was a theft becomes a robbery." Whitaker, 200 N.J. at 460 (citations omitted) (quoting N.J.S.A. 2C:15-1(a)).

Robbery in the first degree occurs if the "actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon." N.J.S.A. 2C:15-

11

1(b). Because robbery is a specific intent crime, the State must show the defendant purposefully used, or threatened the use of, a deadly weapon. State v. Nero, 195 N.J. 397, 401 (2008).[6]

Here, N.F. told the police that Ruffin brandished a gun after she began to wrestle with Adams. Under the circumstances, the grand jury could reasonably infer Ruffin had the purpose to help Adams "unlawfully take[], or exercise[] unlawful control over," the drugs and thus "deprive" N.F. of her property. N.J.S.A. 2C:20-3. Based on the testimony, the grand jury could circumstantially conclude Ruffin had the intent to take the drugs because he accompanied Adams to the apartment to buy the drugs and fled in the same car as Adams after N.F. refused to sell the drugs. Even if Ruffin's attempt to use the gun was not part of the theft, the use of the gun was "intimidating conduct" in the "immediate flight after attempt or the commission of the theft." Whitaker, 200 N.J. at 460.

On the charge of armed robbery, the State was required to present some evidence that Ruffin was armed with a deadly weapon and purposefully put N.F. in fear of serious bodily harm. Hogan, 144 N.J. at 236; N.J.S.A. 2C:15-1. In the presentment to the grand jury, the State offered testimony regarding N.F.'s

---

[6] The State need not present the firearm to obtain an indictment, or even a conviction, for armed robbery. See State v. Hickman, 204 N.J. Super. 409, 414–15 (App. Div. 1985).

statement to the police. N.F. told the police Ruffin brandished a gun, attempted to shoot her several times, and the gun failed to discharge. While fleeing, Ruffin then pointed the gun at N.F.'s brother. Based on the testimony, the grand jury could reasonably infer Ruffin intended to kill N.F. with a gun, or purposely put her in fear of serious bodily injury. The State need not present the weapon or testimony of N.F.'s fear because the evidence demonstrated Ruffin was armed with a deadly weapon and attempted to use it during the theft. Based on circumstantial evidence and reasonable inferences, we are satisfied the State presented some evidence to the grand jury to support each element of the armed robbery charge against Ruffin.

Dismissal of the indictment as to Adams is affirmed.[7] Dismissal of the indictment as to Ruffin is reversed and the indictment is reinstated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] The dismissal of the indictment as to Adams is without prejudice, and the State may elect to re-present the case as to Adams to a third grand jury.