# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3281-23

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

JOSEPH CENTANNI,

     Defendant-Respondent.

_____

Argued June 4, 2025 – Decided June 27, 2025

Before Judges Mayer, Rose and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 22-12-0903.

Milton S. Leibowitz, Assistant Prosecutor, argued the cause for appellant (William A. Daniel, Union County Prosecutor, attorney; Milton S. Leibowitz, of counsel and on the briefs).

Joseph A. Hayden, Jr., argued the cause for respondent (Pashman Stein Walder Hayden, attorneys; Joseph A. Hayden, Jr., Brendan M. Walsh, and Dominique Kilmartin, of counsel and on the brief).

PER CURIAM

The State appeals from a June 11, 2024 Law Division order dismissing without prejudice a forty-two-count Union County indictment charging defendant Joseph Centanni with twenty-three counts of second-degree sexual assault by force or coercion, without inflicting severe personal injury, N.J.S.A. 2C:14-2(c)(1),[1] and nineteen counts of fourth-degree criminal sexual contact by force or coercion, without inflicting severe personal injury, N.J.S.A. 2C:14-3(b).[2]  In its presentation to the grand jury, the State alleged, for a decade, defendant used his position as a landlord to force or coerce various financially struggling tenants to perform sexual favors in exchange for securing an apartment or retaining an apartment if they were in arrears.

In a lengthy written decision accompanying the order, the motion court separated the counts into three categories:  "clearly valid counts"; "clearly invalid counts"; and "most significantly contested counts."  For the reasons that follow, we reverse the court's dismissal of the clearly valid counts; reverse in

---

[1]  Counts one, three, six, eight, ten, thirteen, fifteen, nineteen, twenty-one, twenty-three, twenty-six, twenty-seven, twenty-nine, thirty, thirty-two, thirty-three, thirty-five, thirty-seven, thirty-eight, thirty-nine, forty, forty-one, and forty-two.

[2]  Counts two, four, five, seven, nine, eleven, twelve, fourteen, sixteen, seventeen, eighteen, twenty, twenty-two, twenty-four, twenty-five, twenty-eight, thirty-one, thirty-four, and thirty-six.

A-3281-23

part the court's dismissal of the most significantly contested counts under the State's physical force theory; and affirm the court's dismissal of the clearly invalid counts.

I.

We summarize the pertinent facts from the motion record "in a light most favorable to the State." State v. Twiggs, 233 N.J. 513, 544 (2018). In December 2022, the State commenced the grand jury presentation at issue by summarizing the allegations and explaining its theory of liability. After ascertaining the grand jury previously considered sex crimes during its term, the prosecutor recited the proposed charges, and issued instructions on those charges consistent with the relevant statutes and model jury charges. Pertinent to this appeal, the prosecutor instructed:

> [T]he counts involving sexual assault the law is as follows. The section of our statute provides in pertinent part an actor is guilty of sexual assault if he commits an act of sexual penetration with another person, and the actor uses physical force or coercion, but the victim does not sustain severe personal injury.
>
> In order for you to find the defendant committed this offense the State must prove the following elements: 1) defendant committed an act of sexual penetration with another person; 2) defendant acting knowingly; 3) defendant used physical force or coercion; 4) the victim did not sustain severe personal injury.

. . . .

The third element the State must prove is that the defendant used physical force or coercion. Physical force is defined as the commission of the act of sexual penetration without the victim's freely and affirmatively-given permission to the specific act of penetration alleged to have occurred. You must decide whether the defendant's alleged act of penetration was undertaken in circumstances that left the defendant reasonably to believe that the victim had freely given affirmative permission to the specific act of sexual penetration.

Simply put, affirmatively-given permission means the victim did or said something, which would lead a reasonable person to believe he or she was agreeing to engage in the act of sexual penetration, and freely-given permission means the victim agreed, of his or her own free will, to engage in the act of sexual penetration. Freely and affirmatively-given permission can either be indicated through words or actions that when viewed in light of all of the surrounding circumstances, would demonstrate to a reasonable person that affirmatively and freely-given permission for the specific act of sexual penetration had been given. Persons need not, of course, expressly announce their consent to engage in acts of sexual intercourse for there to be affirmative permission. Permission to engage in an act of sexual penetration can be, and, indeed, often is indicated through physical actions rather than words. Permission is demonstrated when the evidence in whatever form is sufficient to demonstrate that a reasonable person were to believe that the alleged victim had affirmatively and freely given authorization to the act. Proof that the act of sexual penetration occurred without the victim's permission can be based on evidence of conduct or

4

words in light of the surrounding circumstances, and must demonstrate that the reasonable person would not have believed there was an affirmative and a freely-given permission.

If there's evidence to suggest the defendant reasonably believed that such permission had been given, the State must demonstrate that either the defendant did not actually believe that such permission had been freely given, or that such a belief was unreasonable under all of the circumstances. In determining the reasonableness of defendant's belief that the victim had freely given affirmative permission you must keep in mind that the law places no burden on the alleged victim to have expressed non-consent, or to have denied permission. You should not speculate as to what the alleged victim thought or desired, or why he or she did not resist or protest. The State is not required to prove that the victim resisted.

To find the defendant used coercion you must find that the defendant, with the purpose to unlawfully restrict the victim's freedom of action to engage in, or refrain from engaging in, the act of sexual penetration, threatened to: 1) inflict any bodily injury on anyone, or commit another offense; 2) accuse anyone of an offense; 3) expose any secret which would tend to subject a person to hatred, contempt or ridicule, or to impair his or her credit or business repute; 3) take or withhold action as an official, or cause an official to take or withhold action; 4) – that was No. 4, I'm sorry – or perform any other act which would not in itself substantially benefit the actor but which is calculated to substantially harm another person with respect to his or her health, safety, business, calling, career, financial condition, reputation or personal relationships.

5

A-3281-23

> To find the defendant used coercion you must find that the defendant's purpose was to compel the victim to engage in an act of sexual penetration by threatening him or her.
>
> [See Model Jury Charges (Criminal), "Sexual Assault (Force/Coercion) (N.J.S.A. 2C:14-2(c)(1))" (rev. Jan. 24, 2005).]

The prosecutor also explained the law concerning the proposed "very similar" criminal sexual contact charges. The instructions issued were consistent with the model jury charges. See Model Jury Charges (Criminal), "Criminal Sexual Contact (Force/Coercion) N.J.S.A. 2C:14-3(b)" (rev. June 11, 2012); see also Model Jury Charges (Criminal), "Criminal Coercion (N.J.S.A. 2C:13-5)" (approved Jan. 11, 2016).

The State presented evidence for each charge through its sole witness, Joanne Son, a detective assigned to the Special Victims Unit (SVU) of the Union County Prosecutor's Office. Son detailed the victims' allegations and explained the United States Department of Housing and Urban Development assisted the SVU with the investigation because "many of [defendant's] apartments were secured through" housing assistance payments pursuant to Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f.

In December 2023, defendant moved to dismiss the indictment. In the alternative, defendant moved to sever the counts by victim and for a bill of

particulars. Defendant generally argued the State failed to present sufficient evidence of physical force or coercion, "a required element of sexual assault under N.J.S.A. 2C:14-(2)(c)(1) and criminal sexual contact under N.J.S.A. 2C:14-3(b)." Defendant contended "the State's reliance on the landlord-tenant relationship to establish physical force . . . [wa]s unprecedented." In particular, "the financial vulnerabilities of the alleged victims[] d[id] not establish the absence of affirmative and freely-given permission." Defendant also argued the State failed to satisfy any of the definitions of criminal coercion under N.J.S.A. 2C:13-5.

The motion court first found the clearly valid counts were unrelated to defendant's status as a landlord. For count one, the court found the State presented prima facie evidence that defendant physically forced the victim to perform oral sex on him. For counts two, five, seventeen, eighteen, twenty-eight, and thirty-four, the court found defendant "committed sexual contact without permission or physically forced the victim to sexually contact him without permission."

For count twenty-one, the court found defendant committed sexual assault by coercion because he implicitly threatened the victim to perform oral sex on

him. For count twenty-two, the court found defendant committed criminal sexual contact in view of those implicit threats.

Next, the court determined the clearly invalid counts were either time barred (counts four, seven, sixteen, twenty-five, and thirty-one), lacked evidence of penetration (count three), or lacked evidence of touching an intimate part (count twelve).

Turning to the most significantly contested counts, the court determined, as a matter of law, the State could not prove the physical force element of the offenses under the landlord-tenant theory presented to the grand jury. The court further found the State not only failed to provide sufficient evidence regarding the coercion element for these counts, but also the State failed to issue an adequate instruction regarding coercion.

The court also found the State failed to delineate for the grand jury the charges based on force, coercion, or both theories. The court thus dismissed the indictment in its entirety, including the clearly valid counts, reasoning it was impossible to determine the "theory of liability the grand jury relied upon" in charging defendant under those counts. Although it dismissed the indictment without prejudice, the court agreed with defendant's contention that the threats alleged by the State "cannot constitute a violation of the sexual assault and

criminal sexual contact statutes under a force analysis (i.e., freely and affirmatively given permission analysis)."  In view of its decision, the court dismissed as moot defendant's motions to sever and for a bill of particulars.

On appeal, the State argues the court abused its discretion in dismissing the indictment by incorrectly limiting the definition of "freely-given permission."  In the alternative, the State argues the clearly valid charges were not tainted by the purported error.  The State does not, however, challenge the court's findings on the lack of proofs presented under its coercion theory, recognizing the prosecutor is not foreclosed from representing that theory to the grand jury.  Conversely, the State argues it is precluded from re-presenting the charges based on its physical force theory because the court concluded, as a matter of law, defendant's alleged coercive conduct does not constitute "without freely-given permission."

Defendant urges us to affirm.  While his appeal was pending, defendant filed a letter pursuant to Rule 2:6-11(d), citing two recent decisions by this court. He argues, similar to our decision in State v. Keogh, 481 N.J. Super. 67, 83 (App. Div. 2025), "the evidence presented to the grand jury did not fit within the purview of the [governing statute]."  He also argues our decision in State v. Ramadan, 481 N.J. Super. 435, 449-50 (App. Div. 2025), supports his contention

that an indictment issued pursuant to incorrect jury instructions, even if later corrected, cannot stand.

## II.

Well-settled principles guide our review. An appellate court reviews a trial court's decision on a motion to dismiss an indictment for abuse of discretion. State v. Saavedra, 222 N.J. 39, 55 (2015). However, when the decision "was based on the court's interpretation of the statutes pursuant to which [the] defendant was charged" our review is de novo. State v. Bernardi, 456 N.J. Super. 176, 186 (App. Div. 2018); see also State v. S.B., 230 N.J. 62, 67 (2017) (holding appellate courts "review a trial court's decision to dismiss an indictment de novo [when] it [does] not involve 'a challenge to fact-finding on the part of the trial court'" (quoting State v. Cagno, 211 N.J. 488, 505 (2012))). We therefore conduct a de novo review of issues concerning statutory construction, including the meaning of a statute's terms. See State v. Olivero, 221 N.J. 632, 638 (2015).

"An indictment is presumed valid." State v. Feliciano, 224 N.J. 351, 380 (2016). A trial court tasked with a motion to dismiss an indictment therefore must determine "whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury

could reasonably believe that a crime occurred and that the defendant committed it." State v. Morrison, 188 N.J. 2, 13 (2006); see also Saavedra, 222 N.J. at 56-57. If the State has presented "some evidence establishing each element of the crime to make out a prima facie case" the indictment should stand. Morrison, 188 N.J. at 12. Conversely, "[t]he absence of any evidence to support the charges would render the indictment 'palpably defective' and subject to dismissal." Ibid. (quoting State v. Hogan, 144 N.J. 216, 228-29 (1996)); see also State v. Shaw, 241 N.J. 223, 239 (2020).

"[I]n determining the sufficiency of an indictment under the New Jersey Constitution, '[t]he fundamental inquiry is whether the indictment substantially misleads or misinforms the accused as to the crime charged. The key is intelligibility.'" State v. Dorn, 233 N.J. 81, 94 (2018) (second alteration in original) (quoting State v. Wein, 80 N.J. 491, 497 (1979)). Sufficient specificity is necessary "to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge." State v. LeFurge, 101 N.J. 404, 415 (1986) (quoting State v. Boratto, 80 N.J. 506, 519 (1979)).

However, "[i]ncomplete or imprecise grand-jury instructions do not necessarily warrant dismissal of an indictment; rather, the instructions must be

'blatantly wrong.'" State v. Triestman, 416 N.J. Super. 195, 205 (App. Div. 2010) (quoting State v. Hogan, 336 N.J. Super. 319, 344 (App. Div. 2001)). "[A]n indictment should not be dismissed unless the prosecutor's error was clearly capable of producing an unjust result. This standard can be satisfied by showing that the grand jury would have reached a different result but for the prosecutor's error." Hogan, 336 N.J. Super. at 344.

A.

With those guiding legal principles in view, we turn to the issues presented on this appeal. Because the State does not challenge the motion court's conclusion that the prosecutor failed to present sufficient evidence of coercion as charged in the significantly contested counts, we confine our review to the court's legal interpretation of physical force as alleged in those counts.[3]

Although the Code of Criminal Justice does not define the term "physical force," the State argues defendant's conduct was circumscribed by the Supreme Court's interpretation of that term in State in the Interest of M.T.S., 129 N.J. 422 (1992). In M.T.S., the Court equated "physical force" in the sexual offense

---

[3] We note only, as did defendant in his responding brief, the definition of coercion under N.J.S.A. 2C:14-1(j), incorporates "[t]he broad definition set forth in N.J.S.A. 2C:13-5," and as such, "[w]hether that definition will work easily in the context of sexual activity remains to be seen." Cannel, New Jersey Criminal Code Annotated, cmt. 10 on N.J.S.A. 2C:14-1(j) (2025).

statutes with an act of sexual contact or penetration and the absence of affirmative and freely-given consent by the alleged victim. Id. at 444. The Court held the State was not required to prove physical force "extrinsic to the sexual act." Ibid. The Court thus concluded, "[t]he definition of 'physical force' is satisfied under N.J.S.A. 2C:14-2(c)(1) if the defendant applies any amount of force against another person in the absence of what a reasonable person would believe to be affirmative and freely-given permission to the act of sexual penetration." Ibid. (emphasis added).

Accordingly, when the State "does not allege violence or force extrinsic to the act of penetration, the factfinder must decide whether the defendant's act of penetration was undertaken in circumstances that led the defendant reasonably to believe that the alleged victim had freely given affirmative permission to the specific act of sexual penetration." Id. at 447-48. In other words, as the Supreme Court later confirmed in State v. Garron, 177 N.J. 147, 182 (2003), "the act of sexual penetration itself, without [the victim]'s consent, would be sufficient to establish the physical force or coercion required to support a sexual assault conviction."

Following the Court's decision in M.T.S., the model jury charges were amended to reflect the Court's definition of physical force. In the present matter,

the prosecutor's grand jury instructions tracked the model jury charges for sexual assault and criminal sexual contact, including the Court's "physical force" definition. See Model Jury Charges (Criminal), "Sexual Assault (Force/Coercion) (N.J.S.A. 2C:14-2(c)(1))"; Model Jury Charges (Criminal), "Criminal Sexual Contact (Force/Coercion) N.J.S.A. 2C:14-3(b)."

In 2020, nearly three decades after the Court decided M.T.S., the Legislature "amend[ed] certain provisions of the sexual assault statute to make it consistent with current relevant case law as set forth in the instructions presented to the jury during the course of criminal proceedings." S. L. & Pub. Safety Comm. Statement to A. 2767, at 1 (Dec. 9, 2019).[4] In the interim, however, the M.T.S. definition of physical force was the standard. See, e.g., State v. Oliver, 133 N.J. 141, 155 (1993); C.R. v. M.T., 248 N.J. 428, 443 (2021); Triestman, 416 N.J. Super. at 217-18.

---

[4] As the motion court noted, most of the offenses charged in the indictment occurred prior to the 2020 amendment to the sexual assault statute, which removed "physical force" and added "without the victim's affirmative and freely-given permission." Recognizing "the historical precedence" defining force, the court found there was "substantively no difference between the predecessor statutes and the current statutes." The parties do not dispute the court's determination.

In C.R., our Supreme Court applied the M.T.S. standard in the context of the protective order at issue under the Sexual Assault Survivor Protection Act (SASPA), N.J.S.A. 2C:14-13 to -21.  248 N.J. at 431.  Noting "[t]he standard for consent for an alleged victim in a SASPA case should be no different than the standard for consent for an alleged victim in a criminal sexual assault case," the Court held the M.T.S. standard "is applied from the perspective of the alleged victim."  Ibid.  The Court reiterated "[t]he M.T.S. standard requires a showing that sexual activity occurred without the alleged victim's freely and affirmatively given permission to engage in that activity."  Ibid.

In the present matter, the motion court was not convinced the Supreme Court's interpretation of physical force under the sexual assault statute in M.T.S. "could be appropriately applied to the most significantly contested counts where the victims were coerced into agreeing to perform sexual acts."  Noting the lack of precedent to support the State's argument otherwise, the court found "M.T.S. does not suggest that the affirmative and freely-given permission standard could be applied to situations where a victim affirmatively consented to a sexual act but did so because of threats," which did not constitute criminal coercion under N.J.S.A. 2C:13-5.  The court found "to do so . . . would blur the lines between the force and coercion prongs."  Noting the specific, limited circumstances that

15

constituted violations of sexual assault and criminal sexual contact by criminal coercion, the court declined "to create an entirely new theory of liability under the sexual assault and criminal sexual contact statutes." The court concluded even if "the victims felt pressured to engage in sexual acts against their will" – to maintain or secure apartments in defendant's buildings – that "type of pressure" did not constitute physical force "under an affirmative and freely-given permission analysis."

Based on our de novo review of the applicable legal principles, we conclude the court incorrectly interpreted the law regarding physical force on the significantly contested counts of the indictment. In our view, whether a victim felt threatened to engage in sexual relations is but one factor to consider when determining whether permission was affirmatively and freely given – "from the perspective of the alleged victim." See C.R., 248 N.J. at 431. Accordingly, although we acknowledge the State failed to present sufficient evidence of criminal coercion, that insufficiency has no bearing on whether the alleged victims' consent was freely given under the circumstances presented here. The State presented sufficient evidence to the grand jury that the victims consented only because they feared they would lose their housing or defendant

would not lease an apartment to them. Notably, the State need only prove physical force or coercion, not both theories.

We conclude the evidence presented to the grand jury was sufficient to sustain the most significantly contested charges under the State's physical force theory. At trial, of course, if "defendant claims that the alleged victim[s] gave permission for the penetration, the role of the jury is to determine 'whether the defendant's belief that the alleged victim[s] had freely given affirmative permission was reasonable.'" Oliver, 133 N.J. at 155 (quoting M.T.S., 129 N.J. at 448).

### B.

Nor are we convinced the State's failure to distinguish the charges based on force, coercion, or both theories warranted dismissal of the clearly valid counts. See Triestman, 416 N.J. Super. at 205. The instructions issued by the prosecutor were not "blatantly wrong." See Hogan, 336 N.J. Super. at 344.

However, our decision should not be construed as impinging upon defendant's right to be apprised of the State's theory of criminality. We are mindful defendant moved, in the alternative, for a bill of particulars. See R. 3:7-5 (providing "[a] bill of particulars shall be ordered by the court if the indictment . . . is not sufficiently specific to enable the defendant to prepare a defense").

We further note the State indicated in its appellate reply brief and during oral argument before us, the prosecutor intends to re-present the matter under one or more coercion theories.

Accordingly, on remand, defendant's motions for a bill of particulars and to sever the counts of the indictment by victim shall be reinstated and considered by the court, unless defendant moves to withdraw either or both applications, or the State has obtained a superseding indictment clarifying its theories of liability.

Affirmed in part, reversed and remanded in part. Jurisdiction is not retained.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M. C. Harley*

Clerk of the Appellate Division

A-3281-23